OPINION
{¶ 1} Appellant, Kevin M. Gregg ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas which affirmed the decision of appellee, the Unemployment Compensation Review Commission ("commission"), denying appellant's request for unemployment benefits. For the reasons that follow, we affirm the judgment of the court of common pleas.
 {¶ 2} Appellant worked for appellee SBC/Ameritech ("appellee") from June 26, 2000 until February 28, 2002. On June 6, 2001, appellant signed a "Technician Expectations" form, which states: "Company provided cellular phones are to be used for company business only." On November 6, 2001, appellant was instructed on appellee's Code of Business Conduct ("CBC"), dated September 2001. The CBC instructs employees to only use company property for the company's benefit, prohibits unauthorized phone calls from company equipment, and states that misuse of company property can result in disciplinary action including termination of employment.
 {¶ 3} On December 13, 2001, appellant was suspended without pay for ten days for making 89 unauthorized non-business calls on a company cellular phone during working hours in the two weeks preceding his suspension. The day he was suspended, appellant was given a letter captioned as a "Final Warning," stating in pertinent part, "Your situation is very serious. Any further occurrences will lead to dismissal."
 {¶ 4} Appellant returned to work on January 4, 2002. At a crew meeting on January 8, 2002, appellant and his co-workers were again told that cellular phones were to be used for company business only. Appellant's supervisor instructed them that any call unrelated to the employee's daily work assignment constitutes a non-business call. Employees were permitted to make an emergency personal call with a supervisor's approval.
 {¶ 5} On February 8, 2002, appellee identified 118 non-business calls, representing more than ten hours of company time, that appellant made from a company cellular phone between January 3 and February 8, 2002. Appellant did not seek permission to make any of these calls. Appellant contends that, though the calls were not related to daily work assignments, they were company business because they concerned his labor grievances and his workers' compensation claim. Later that day, appellee gave appellant a letter stating he was immediately suspended, pending termination, for making unauthorized calls on his company cellular phone and for theft of company time. Appellant's termination was effective on February 28, 2002.
 {¶ 6} Appellant applied for unemployment compensation, which appellee contested. On March 27, 2002, the commission made an initial determination that appellant had been discharged for just cause and was therefore not eligible to receive unemployment compensation. Appellant filed an appeal with the commission.
 {¶ 7} On May 10, 2002, appellee notified the commission via fax that it had just received a subpoena seeking discovery for the May 17, 2002 appeal hearing. The discovery sought by appellant included all cellular phone records from everyone in his work crew for a four-month period, and a copy of an investigative report prepared by appellee's asset protection manager. Appellee contended the discovery request was overbroad, not relevant, and could not be produced in such a short time.
 {¶ 8} On May 17, 2002, the hearing officer addressed these discovery issues. The hearing officer told appellant that if the investigative report was not part of appellee's decision to terminate appellant, it would be irrelevant and not subject to discovery. To determine the relevancy of the requested cellular records, the hearing officer asked appellant whether he knew of specific instances where he was being treated differently than other employees, or if he was "just fishing." (May 17, 2002 Tr. at 7.) Appellant stated he was being treated differently than "everyone in his crew," but did not identify any particular individual whom he knew made personal calls and was not disciplined. Id.
 {¶ 9} The hearing officer determined that as there were no specific requests or examples of like conduct but disparate treatment, and the initial discovery request was overbroad. The hearing officer asked appellant to make new, more specific discovery requests, which would include the names of the employees, and continued the hearing until June 17, 2002. Appellant agreed to make more specific discovery requests for subpoenas to issue.[1]
 {¶ 10} When the hearing resumed, appellant admitted he had not provided, with specificity, the names of the employees whose records he sought. Appellee had provided appellant phone records for six co-workers, but did not provide the requested internal security investigation report. The hearing officer stated the report was not relevant, as it was not mentioned in appellee's stated reasons for discharging appellant. No party asked for a continuance. Appellant's union representative, who represented him in this proceeding, agreed to proceed with the hearing. (June 17, 2002 Tr. at 2-3.)
 {¶ 11} Thomas Keenan, appellant's immediate supervisor ("Keenan"), testified he had repeatedly instructed his entire crew, including appellant, that company cellular phones were only to be used for company business. Keenan stated that when he suspended appellant, appellant claimed he had permission from one of his previous supervisors, Jim Yates, to use the company cellular phone for personal matters. Appellant contended his long distance cellular calls to his family in Indiana were allowed because everyone was allowed to call home. According to Keenan, appellant also claimed his actions were permitted because "everyone does it so it's okay." (Id. at 10.) Keenan told appellant when he returned from his ten-day suspension that his job was in jeopardy if he again violated company policy. Keenan also stated he has disciplined other employees who have violated the same policy.
 {¶ 12} Richard Wakefield is a training and development manager. Wakefield was assigned to work with appellant to see if he could help him improve his job performance, for reasons unrelated to appellant's cellular phone usage. Wakefield realized appellant may have been making personal calls on company time and equipment, and he reported his suspicions to Keenan. Wakefield denied giving appellant permission to use company equipment to make personal calls.
 {¶ 13} James Sargent is an asset protection manager. He testified he investigated appellant for misusing company property by accessing, without permission, various customer telephone lines to make long distance calls.[2] Sargent testified that he did not have any part in the decision to terminate appellant.
 {¶ 14} Appellant admitted he made the calls upon which appellee based its decision to terminate him. He contended the calls he made after his suspension were not personal calls because they pertained to his union grievances and to his workers' compensation claim. Appellant claimed he had permission from both Yates and Wakefield to make personal calls on company equipment. Appellant stated he was never individually warned about his cellular phone usage before his December 13, 2001 suspension. Appellant acknowledged he was told on January 8, 2002, that further misuse of the cellular phone would lead to his termination.
 {¶ 15} Chris Fisher is chief steward of the local union of which appellant is a member. When the hearing officer questioned the relevance of Fisher's testimony, appellant's union representative explained that Fisher had personal knowledge of appellant's grievances and how other employees had been disciplined. Fisher testified that he did not know of any other employees who had been disciplined for making calls to the union during working hours. Fisher knew of two other employees who had been disciplined for misusing cellular phones, but that the discipline was limited to a warning and repayment of the phone bill. Fisher agreed that appellant had been properly instructed on what constitutes permissible cellular phone usage.
 {¶ 16} After Fisher's testimony was completed, the hearing officer stated he did not believe he needed to hear any additional testimony. Appellant had subpoenaed witnesses Mike Hay, who was Keenan's supervisor, and Jim Yates, who was one of appellant's former supervisors. Though Hay and Yates were present and ready to testify, appellant did not object to the closing of testimony and did not offer what the testimony of Hay and Yates would be, as he did with Fisher's testimony. The hearing officer admitted telephone records from three of appellant's co-workers, stated he would review the materials that were submitted, and would schedule another evidentiary hearing if necessary to enable him to reach a decision. Appellant and appellee made closing arguments, and the hearing was closed. Shortly thereafter, the hearing officer issued a decision finding appellant was terminated for just cause and was not entitled to unemployment compensation. The common pleas court affirmed the commission's decision, and this appeal ensued.
 {¶ 17} Appellant sets forth the following five assignments of error: [3]
Assignment of Error I
The commission denied Appellant the opportunity to present or question two witnesses who were subpoenaed. Therefore, he was prevented from presenting testimony essential to his case.
Assignment of Error II (part A)
Appellant subpoenaed records from his employer before the hearing and the employer failed to comply with the subpoena. Therefore, he was prevented from presenting evidence essential to his case.
Assignment of Error II (part B)
Appellant had Subpoenaed: Appellant's co-workersnon-business related cell records Which were also ordered by the Hearing Officer. The records now indicate they were not submitted.
Assignment of Error III parts (1.) and (2.) [sic]
The hearing officer did not afford Appellant an opportunity to present rebuttal evidence essential to his case. He has again effectively prevented Appellant from presenting evidence essential to his case thus denying him a fair hearing.
Assignment of Error IV
The hearing officer [sic] reasons were other than those stated by the company.
Assignment of Error V
The hearing officer can not simply disregard evidence that the claimant had properly provided. Failing to apply the correctpolicy in justifying Appellants [sic] termination.
(Emphasis sic.)
 {¶ 18} Unemployment benefits may not be paid to a person who has been discharged for just cause. R.C. 4141.29(D)(2)(a). "Just cause" is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. Whether just cause exists depends on the unique factual circumstances of each case. Irvine v. Unemp. Comp. Bd. ofReview (1985), 19 Ohio St.3d 15, 17.
 {¶ 19} A claimant has the burden of proving he or she is entitled to unemployment compensation benefits. Vickers v. OhioState Bur. of Emp. Serv. (Apr. 22, 1999), Franklin App. No. 98AP-656, citing Irvine, supra, at 17. A reviewing court must affirm the decision of the commission unless it was unlawful, unreasonable, or against the manifest weight of the evidence.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, paragraph one of the syllabus. A reviewing court may not make factual findings or determine the credibility of witnesses, and may not overturn a decision of the commission simply because it might reach a different result. Id. at 696, 697.
 {¶ 20} In his first assignment of error, appellant claims the commission denied him the opportunity to present or question two witnesses, Hay and Yates, thereby preventing him from presenting testimony essential to his case. In Miller v. Miller (Aug. 21, 1980), Franklin App. No. 80AP-168, we explained:
However, the transcript of proceedings indicates appellant, when refused permission to present testimony * * * did not attempt to proffer such testimony into the record.
A reviewing court cannot rule upon the exclusion of evidence by the trial court unless the rejected evidence has been made a part of the transcript of proceedings or record. Mingo Junction v.Sheline (1935), 130 Ohio St. 34.
Here, appellant made no attempt to proffer into the record what the excluded evidence would have tended to prove. * * *
Therefore, this court cannot determine whether the exclusion of the testimony would constitute prejudicial error.
Id.
 {¶ 21} Similarly, in this case, appellant did not object when the hearing officer said he did not need to hear additional testimony. Nor did appellant proffer into the record what he believed the additional testimony would show. "Although appellant alleges the board prohibited relevant testimony * * *, appellant does not tell us anything about that alleged testimony or why it was relevant." Ray v. Ohio Bur. of Emp. Serv. (Dec. 6, 1994), Ross App. No. 94 CA 2028. See, also, Galloway v. Unempl. Comp.Bd. of Review (July 5, 1990), Summit App. No. C.A. 14404 (issue not preserved for appeal where, at hearing, appellant did not object to failure to enforce subpoena and did not proffer what he believed the evidence would have shown).
 {¶ 22} A hearing officer has the discretion to exclude evidence that is cumulative or irrelevant. R.C. 4141.281(C)(2). Here, the hearing officer exercised his discretion and closed the hearing, but he also indicated his willingness to reopen the hearing if additional evidence was necessary. In the absence of a proffer, we cannot say the hearing officer abused his discretion in excluding the testimony of Hay and Yates. Appellant's first assignment of error is therefore overruled.
 {¶ 23} The two parts of appellant's second assignment of error are interrelated and will be discussed together. Appellant claims he was prevented from presenting essential evidence because an internal security investigation report was not provided to him.
 {¶ 24} The record actually contains reports of two internal security investigations. Appellant was investigated for misusing company equipment to make unauthorized calls on customers' lines. Appellant was also investigated for allegedly breaking into a customer's locked area in order to access telephone equipment.
 {¶ 25} The hearing officer's review and just cause determination is limited to the actual reasons for a claimant's discharge, and evidence of circumstances not relied on by the employer may not be considered. Braithwaite v. Dept. ofCommerce, Franklin App. No. 03AP-381, 2003-Ohio-6562, citing Inre Claim of Guy (2001), 146 Ohio App.3d 20. In its February 8, 2002 letter, appellee stated it terminated appellant for misusing a company cellular phone and for theft of company time. Neither internal security report is relevant to appellee's stated reasons for terminating appellant. Accordingly, the hearing officer did not err in proceeding without the reports.
 {¶ 26} The hearing examiner admitted the records of three of appellant's co-workers. In his brief, appellant contends these records show other employees violated the cellular phone policy and were not terminated. However, these records are not identified in any way that would enable the hearing officer to determine which calls appellant claims constitute non-business calls, or to compare the alleged disparity in discipline. Appellant did not proffer what the records that were not produced would have shown. Appellant has not identified any co-worker who had a comparable offense and yet was treated differently. Under these circumstances, the hearing examiner did not abuse his discretion by admitting the submitted records and proceeding with the hearing. Appellant's second assignment of error is therefore overruled.
 {¶ 27} Appellant's third assignment of error, labeled as having two parts, addresses only one issue. Appellant claims the hearing officer did not offer him the opportunity to present rebuttal evidence, thereby preventing him from having a fair hearing.
 {¶ 28} The hearing officer has broad discretion in how to conduct the hearing, so long as each party has a fair opportunity to be heard. R.C. 4141.281(C)(2); Dragoo v. Bd. of Review, OhioBur. of Emp. Serv. (Mar. 29, 1994), Franklin App. No. 93AP-980. At the beginning of the hearing, the hearing officer outlined the procedure he would follow. The hearing officer would call each witness and would question him first, followed by appellant and appellee.[4] After testimony was completed, appellant and appellee would have an opportunity to make a closing statement, and the hearing would be closed.
 {¶ 29} The procedure before the commission comported with general principles of fairness, as the statute requires. If appellant had additional evidence to present before the hearing was closed, he had an obligation to proffer it for the record and to state why it was relevant. Because appellant did not do so, there is no basis in the record to find that the hearing officer's decision to limit testimony was either unlawful or unreasonable. Appellant's third assignment of error is therefore overruled.
 {¶ 30} In his fourth assignment of error, appellant contends the hearing officer allowed allegations that were not relevant to his termination to be addressed in the hearing. Specifically, appellant objects to references by the hearing officer to his attendance problems, and to the internal security report alleging he improperly accessed customer lines to make long distance calls.
 {¶ 31} To determine whether evidence is inadmissible, a hearing officer must first hear what the evidence is. A hearing officer, having been trained in the law, is presumed to reject any improper evidence he or she may have heard. Hawkins v.Marion Corr. Inst. (1990), 62 Ohio App.3d 863, 869. A reviewing court will be slow to overturn a decision by a hearing officer on the basis that improper evidence was presented unless it affirmatively appears from the record that the improper evidence was actually considered. In re Sims (1983), 13 Ohio App.3d 37,41.
 {¶ 32} The record does not show that appellant ever objected to these references at the hearing. There has been no affirmative showing that the hearing officer relied on appellant's attendance issues or on either internal security report in reaching his decision. Moreover, the hearing officer's "just cause" determination is clearly based only on appellant's violations of company cellular phone policies. Thus, references at the hearing to other disputes between appellant and appellee had no bearing on the outcome the hearing officer reached.
 {¶ 33} Appellant also objects to the hearing officer's statement at page three of his decision that "[e]ven after the suspension ended[,] Claimant stated that he was still going to keep on using the cell phone but not for family or long distance calls." (Hearing Officer Decision, at 3.) This statement is consistent with some of the evidence presented at the hearing. Keenan testified that after his ten-day suspension, appellant continued to insist his actions were not improper because "everybody does it." (June 17, 2002 Tr. at 17.) The hearing officer asked appellant, "Did you believe you had the right to make any and all calls you wanted?" Appellant's answer was "yes." (Id. at 51.) Later in the hearing, appellant denied stating he would continue to use the phone for personal calls. (Id. at 58.) Keenan's testimony contradicts at least part of appellant's testimony. Appellant's own testimony is internally inconsistent as referenced above. Determining the credibility of witnesses is exclusively within the province of the hearing officer, and we may not substitute our judgment for his on the issue. Appellant's fourth assignment of error is therefore overruled.
 {¶ 34} In his fifth assignment of error, appellant claims the hearing officer ignored evidence of other cellular phone policies issued by appellee, which he contends permitted his actions. We disagree.
 {¶ 35} Appellant was instructed on appellee's company cellular phone policies on June 6, November 6, December 13, 2001, and January 8, 2002. During that period, appellant received a ten-day suspension without pay for violating these policies, and was told in writing that any future policy violations would result in his termination. Appellant was told that "company business" means calls that were related to the particular work to which appellant was assigned on any particular day. In the first month after appellant's ten-day suspension, Keenan documented 118 calls appellant made from a company cellular phone that were not related to his work assignments, notwithstanding his repeated instructions on company policies.
 {¶ 36} Appellant has provided documents preceding his employment that he claims are other company policies from 1997 and 1998 and that permit him to make the disputed calls. Appellant offers no evidence to show how these older policies pertain to him. He did not challenge appellee's representatives on the more recent and relevant policies when they testified. The hearing officer's decision that appellant deliberately continued to make calls in violation of appellee's policy is neither unlawful, unreasonable, nor against the manifest weight of the evidence.
 {¶ 37} Appellant contends his discharge was without just cause because he should have been subjected to a less severe sanction according to a progressive discipline policy in his collective bargaining agreement. In determining whether just cause for termination exists in an individual case, the provisions of collective bargaining agreements do not bind the commission in any way. McCoy v. Ohio Bur. of Emp. Serv. (Sept. 26, 2000), Athens App. No. 00CA12, citing Youghiogheny OhioCoal Co. v. Oszust (1986), 23 Ohio St.3d 39, syllabus. Thus, the commission's assertion at oral argument that appellant's termination was upheld through the collective bargaining process is not dispositive of whether appellee had just cause to terminate him. Similarly, the union steward's testimony that no one had previously been terminated for these violations has no bearing on whether appellant exhibited a deliberate disregard for his employer's interests.
 {¶ 38} In the matter sub judice, appellant was suspended from work without pay for ten days because he made 89 unauthorized cellular phone calls in the two weeks preceding his suspension. When he returned to work, appellant was told he would be terminated if he made any more cellular phone calls that were not related to his daily assigned work, and he nonetheless made 118 more such calls.
 {¶ 39} In Carpenter v. Ohio State Bur. of Emp. Serv. (July 27, 2000), Cuyahoga App. No. 77559, an employee was terminated for leaving the company's premises without first obtaining a pass from the plant superintendent. The employee knew of the policy, but nonetheless left the premises on his lunch break to go to a nearby convenience store without obtaining the required pass. In upholding the decision of the hearing examiner that the employee was terminated for just cause, the court stated:
Plaintiff asserts that his termination was not based upon" just cause" as is required under R.C. 4141.29(D)(2)(a) because this statute is to be liberally construed and his conduct was nothing more than a mere violation of a company work rule. However, "the critical issue is not whether the employee has technically violated some company rule, but whether the employee by his actions demonstrated an unreasonable disregard for his employer's interests." Piazza v. Ohio Bur. of Emp. Serv. (1991),72 Ohio App.3d 353, 357.
Id.
 {¶ 40} As was the case in Carpenter, there is a basis to find appellant's actions constituted a deliberate and unreasonable disregard for appellant's business interests. The fact that the hearing officer reached a conclusion unfavorable to appellant does not mean evidence was ignored. Appellant's fifth assignment of error is overruled.
 {¶ 41} Having reviewed the entire record, we cannot say the hearing officer's decision was unlawful, unreasonable, or against the manifest weight of the evidence. For all of the above reasons, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Brown, JJ., concur.
[1] Appellant now claims he did produce names of seven of his co-workers and that the hearing officer issued subpoenas for their cellular phone records. (Brief of appellant, at 13.) The extensive record before us does not contain these names or the subpoenas appellant claims were issued. Appellant claims these names were provided with a December 23, 2002 motion asking the common pleas court to "correct the records." In overruling this motion, the common pleas court correctly noted that our review is limited by statute to the record as certified by the commission. R.C. 4141.282(H). The commission is solely responsible for producing the record of its proceedings. R.C. 4141.282(F). We cannot consider the information to which appellant now refers, since it is not part of the certified record.
[2] Appellee alleged that appellant accessed "cross-cut" boxes, which are locations where main telephone lines branch off to customer locations, and used customer lines to make personal calls. Cross-cut boxes also contain phone lines that are unassigned and are reserved for future use.
[3] At oral argument, appellant contended this court should be aware that his termination was in retaliation for his filing a complaint with the Equal Employment Opportunity Commission. Appellant did not address this issue in his hearing before the commission or on appeal to the common pleas court. Our review is limited to the record as certified by the commission. R.C.4141.282(H). Moreover, an appellate court will not review an issue that was neither raised in the proceedings below nor addressed in appellant's brief. Peters v. RiverviewPublications, Inc. (Oct. 29, 1987), Franklin App. No. 86AP-1012; App.R. 16(A)(3). In any event, appellant did not file his EEOC complaint until March 12, 2002, more than a month after he wassuspended pending termination.
[4] A hearing officer has an affirmative duty to question parties and witnesses in order to ascertain the facts and fully develop the record. R.C. 4141.484(C)(2).