OPINION
{¶ 1} Appellant-appellant, Darrell Harrison, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee-appellee, Unemployment Compensation Review Commission ("commission"), denying appellant's application for unemployment compensation benefits. Because the commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence, we affirm.
 {¶ 2} Appellant initially filed for unemployment compensation benefits on July 2, 2002, after being discharged on June 26, 2002 from employment with Penn Traffic Company, the company then operating a chain of grocery stores under the name of Big Bear ("employer"). The director of the Ohio Department of Job and Family Services initially allowed appellant's application for benefits based upon a finding that appellant was discharged without just cause. The employer appealed, and the director's redetermination affirmed the allowance of benefits. On the employer's appeal of the director's redetermination, a hearing officer conducted a hearing on June 5, 2003 and, finding appellant was discharged for just cause, reversed the director. Appellant requested review before the commission, but the requested review was disallowed. Appellant then appealed to the common pleas court, which affirmed the determination of the commission. On appeal, appellant assigns the following errors:
Assignment of Error I
The Common Pleas Court erred and abused its discretion in not reversing the decision of the Commission as unlawful, unreasonable or against the manifest weight of the evidence.
Assignment of Error II
The Common Pleas Court erred in finding "just cause" in connection with Appellant's work or "sufficient fault" as a basis for supporting the Commission's decision when the Common Pleas Court, itself, acknowledged that: a) the "grazing" consisted of the consumption of a "de minimis" amount of food from damaged containers tendered by Employer's undercover agent, b) there was no proof to show that Appellant had been specifically informed of a company policy that "grazing" was subject to immediate discharge; c) there were no findings of any other violations of the work rules; and d) the Common Pleas Court further found that "consumption of a handful of cereal and some Hershey Kisses would not normally rise to the level of misconduct that would give rise to termination."
Assignment of Error III
The Common Pleas Court erred in not reversing the Commission's decision due to the denial of constitutional due process by the Hearing Officer in not enforcing and properly issuing the subpoena requested by the Appellant.
 {¶ 3} R.C. 4141.29 sets forth the statutory authority for an award of unemployment benefits and provides that "[e]ach eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in this chapter." In that context, R.C.4141.29(D)(2)(a) establishes that a claimant who quit his or her work without just cause or "has been discharged for just cause in connection with his [or her] work" is not entitled to unemployment compensation benefits. The claimant has the burden to prove his or her entitlement to benefits. Irvine v. Unemployment Comp. Bd. of Review (1985),19 Ohio St.3d 15, 17.
 {¶ 4} The term "just cause" has been defined "in the statutory sense, [as] that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine, supra, quotingPeyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12. The determination of just cause must be analyzed in conjunction with the purpose of the unemployment compensation act: to provide financial assistance to individuals who remain involuntarily unemployed due to adverse business and industrial conditions. Irvine, supra. "It is well established that `fault is essential to the unique chemistry of a just cause termination.'" Binger v. Whirlpool Corp. (1996), 110 Ohio App.3d 583,590, quoting Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv.
(1985), 73 Ohio St.3d 694. The critical issue is not whether the employee has "technically" violated some company rule, but whether the employee demonstrated an unreasonable disregard for the employer's interests.Gregg v. SBC Ameritech, Franklin App. No. 03AP-429, 2004-Ohio-1061, ¶ 25, quoting Piazza v. Ohio Bur. of Emp. Serv. (1991), 72 Ohio App.3d 353,357.
 {¶ 5} The determination of whether just cause exists to support discharge depends on the factual circumstances of each case and is largely an issue for the trier of fact. Irvine, supra; Peterson v.Director, Ross App. No. 03CA2738, 2004-Ohio-2030. "Determination of purely factual questions is primarily within the province of the referee and the board. Upon appeal, a court of law may reverse such decisions only if they are unlawful, unreasonable, or against the manifest weight of the evidence." Irvine, supra, at 17-18.
 {¶ 6} Reviewing courts are not permitted to make factual findings or determine the credibility of witnesses. Irvine, supra, at 18; Simon v.Lake Geauga Printing Co. (1982), 69 Ohio St.2d 41, 45 (noting that "[a] reviewing court can not usurp the function of the triers of fact by substituting its judgment for theirs"); Aliff v. Ohio Dept. of Job Family Serv. (Sept. 25, 2001), Franklin App. No. 01AP-18. "The duty or authority of the court is to determine whether the decision of the board is supported by the evidence in the record." Irvine, at 18. If some evidence supports the commission's decision, the reviewing court, whether a common pleas court or court of appeals, must affirm. Crisp v. SciotoResidential Serv., Inc., Scioto App. No. 03CA2918, 2004-Ohio-6349. Where the board might reasonably decide either way, reviewing courts must leave the board's decision undisturbed. Id.
 {¶ 7} In the first assignment of error, appellant claims the common pleas court abused its discretion in not finding the commission's decision to be unlawful or arbitrary. In the second assignment of error, appellant asserts the common pleas court abused its discretion in not reversing the commission. Because the first two assignments of error are interrelated, we address them together.
 {¶ 8} The evidence adduced at the hearing established that appellant worked for the employer from 1996 through 2002. During the last two years of his employment, appellant served as the head night stock clerk and essentially was in charge of the store and several employees under his supervision, depending on the night. As appellant testified, "I am the night manager, yes." (Record of Hearing, 178.) During appellant's tenure in that position, the particular store had reported "shrinkage" problems, referring to missing stock and merchandise.
 {¶ 9} The loss prevention personnel assigned Mike Logan, operating undercover, to work nights with appellant from June 17, 2002 through June 21, 2002. After each night of work, Logan verbally reported to the loss prevention personnel and followed up with written reports. Outside surveillance, that revealed no irregular openings of perimeter doors, also was conducted several times between June 8, 2002 and June 22, 2002. Although no night stock employees were observed taking product out of the store, on several nights the employees were observed taking extensive breaks.
 {¶ 10} Logan reported that appellant and employees under his supervision violated certain employer policies. Specifically, Logan reported that appellant ate an undetermined amount of Hershey Kisses and a handful of cereal from opened bags Logan found on the sales floor and brought to appellant for proper disposal. Logan further reported that after appellant ate the Hershey Kisses himself, appellant offered some to Logan. One night employee under appellant's supervision, Conrad, eventually was terminated for consuming a pack of cough drops without paying for it. A second night employee under appellant's supervision, Downour, was terminated for damaging product. Logan's notes state that "[appellant] tells UC [undercover] `what happens on the stock crew stays on the stock crew and they don't really tell mgrs, [managers] it is better that way.'"
 {¶ 11} After the investigation, appellant was interviewed. Appellant denied any wrongdoing and was placed on suspension. The following day the employer gave appellant the option to resign or be fired. Appellant refused to resign because he felt he did nothing wrong, and the employer discharged him.
 {¶ 12} Two policies were introduced at the hearing. One policy, that the hearing officer relied on in making its determination, states the following:
Offenses that will result in immediate discharge:
Reporting for work under the influence of a controlled substance or alcohol.
Unauthorized/illegal possession, sale or use of controlled Substances or alcohol on Company property.
* * *
Any form of misappropriation, falsification, fraud, theft, grazing (consumption of product without payment), or dishonesty in company related matters.
 {¶ 13} The other policy, which appellant argues applies to him, states that "[f]ood from damaged or broken packages may not be eaten under any circumstances." It further provides in bold capital letters that "ANY EMPLOYEE WHO VIOLATES ANY OF THESE rules/policies will be subject to disciplinary action up to and including discharge."
 {¶ 14} Appellant contends the record fails to demonstrate he knew of the employer's policy that "grazing," however minimal, would result in immediate discharge without any prior warnings. In support of his contentions, appellant emphasizes that the employer did not produce a signed acknowledgement form to demonstrate appellant's knowledge of an "immediate discharge" policy. Although appellant testified he knew he was not supposed to eat product without paying for it, appellant maintains that the policy language providing for "disciplinary action up to and including discharge" reflects the employer's intention to use a progressive disciplinary process for appellant's "grazing."
 {¶ 15} Appellant's contentions regarding progressive discipline find little support in the record; indeed, the record contains insufficient evidence to suggest the employer ever utilized a progressive discipline policy. Moreover, in his findings of fact the hearing officer found the employer's policy providing for "immediate discharge" applied to appellant. Even if it did not, the language of either policy permits discharge as an appropriate form of discipline for a violation. While the phrase "up to and including discharge" may permit an employer to use progressive discipline, the employer nonetheless retained the discretion under that language to either discharge an employee or issue warnings for violations of company policy. As a result, whether appellant signed an acknowledgement form with respect to the policy providing for "immediate discharge" is not dispositive; nor is the language allowing progressive discipline. Accordingly, some evidence supports the commission's factual finding that the employer could immediately discharge appellant for consuming product without paying for it.
 {¶ 16} Appellant nonetheless urges that because the common pleas court observed the particular violations would "not normally rise to the level of misconduct that would give rise to termination" and were "de minimus," the commission's decision must be reversed. Although the common pleas court made such statements, it correctly recognized that it could not substitute its judgment for that of the commission. Similarly, this court has no authority to substitute its judgment for that of the commission, even though we recognize this case presents a close question.
 {¶ 17} To the extent the employer cannot return the damaged product, the employer arguably suffered no substantial detriment from appellant's "grazing." Nonetheless, the commission reasonably could view appellant's actions as detrimental to the employer's interests in light of appellant's position as supervisor of the night stock crew, two of whom were also terminated for policy violations. Where, as here, the commission might reasonably decide either way, reviewing courts must leave undisturbed the commission's decision. Crisp, supra.
 {¶ 18} Lastly, appellant takes issue with Logan's credibility. Credibility, however, is not an issue for this court's determination. Credibility determinations remain within the province of the commission.Simon, supra. Because the evidence of record supports the commission's just cause finding, the decision to deny unemployment compensation benefits was not unreasonable, arbitrary, or against the manifest weight of the evidence. Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 19} In the third assignment of error, appellant contends he was denied constitutional due process because the hearing officer failed to properly issue a subpoena for documents to the employer.
 {¶ 20} R.C. 4141.281(C)(2) provides that "* * * the principles of due process in administrative hearings shall be applied to all hearings conducted under the authority of the commission. In conducting hearings, all hearing officers shall control the conduct of the hearing, exclude irrelevant or cumulative evidence, and give weight to the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of serious affairs. Hearing officers have an affirmative duty to question parties and witnesses in order to ascertain the relevant facts and to fully and fairly develop the record. Hearing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure." Dragoo v. Bd. of Review, Ohio Bureau of Emp.Serv. (Mar. 29, 1994), Franklin App. No. 93AP-980.
 {¶ 21} Similarly, Ohio Adm. Code section 4146-7-02 provides the commission and hearing officers shall conduct hearings in such order and manner and shall take any steps consistent "with the impartial discharge of their duties which appear reasonable and necessary to ascertain all relevant facts and to render a fair and complete decision on all issues which appear to be presented." Not only does the hearing officer have discretion to limit the volume and scope of testimony and documentary evidence, but pursuant to Ohio Adm. Code 4146-15-01 and "[u]pon the request of an interested party * * * the review commission or a hearing officer may, at any time, issue subpoenas to compel the attendance and testimony of witnesses and production of * * * documents at any hearing."
 {¶ 22} Appellant is correct that he requested the commission to issue a subpoena to the employer for certain witnesses and certain documents, including, but not limited to, appellant's personnel file, the employer's policy and procedures manual, video tapes demonstrating wrongdoing, and the investigation file. At the beginning of the hearing, the hearing officer acknowledged the subpoena was issued to the store manager, Scott Montgomery. The hearing officer discussed the issue with appellant and told him he could inquire of the employer's witnesses whether they brought the documents to the hearing. The hearing officer stated that if no documents were produced, and if he determined they were relevant and material, he would reissue the subpoena and reassign the matter.
 {¶ 23} Appellant in fact cross-examined the witnesses regarding the requested documents and the failure to bring any of them. While the witnesses' failure is troubling, appellant did not request a postponement or object at the end of the hearing when the hearing officer determined the documents were not material to his decision.
 {¶ 24} Similarly, appellant did not attempt to proffer into the record what the evidence would have tended to prove. A reviewing court cannot rule upon the exclusion of evidence unless the evidence has been made part of the record by proffering it. Gregg, supra. The hearing officer has discretion to exclude cumulative or irrelevant evidence. R.C.4141.281(C)(2); Gregg, supra. The record does not explain much about why the hearing officer concluded the documents were not necessary, and in the absence of a proffer we cannot say the hearing officer abused his discretion in making a determination based solely on the evidence in the commission's record.
 {¶ 25} As the hearing officer noted repeatedly, the only issue before the commission was whether just cause existed to discharge appellant. It is not clear that all of the requested documents were pertinent to that determination. Moreover, some of the evidence presented at the hearing duplicated contents of the investigation file which appellant subpoenaed. Further, appellant's personnel file, also subpoenaed, was discussed at the hearing, along with the fact that appellant was not formally disciplined during his six-year tenure with the employer.
 {¶ 26} In the final analysis, the record does not support a finding of reversible error in the hearing officer's failure to enforce the subpoenas. From a procedural standpoint, appellant's seeming acquiescence to not enforcing the subpoenas largely negates the hearing officer's non-action. From a substantive standpoint, we cannot conclude appellant was prejudiced when we do not know what the subpoenaed witnesses would have testified to or what the subpoenaed documents would have revealed. Accordingly, appellant's third assignment of error is overruled.
 {¶ 27} Having overruled appellant's first, second, and third assignments of error, we affirm the judgment of the common pleas court.
Judgment affirmed.
Lazarus and McGrath, JJ., concur.