JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Claimant Patrick Lyons appeals from the order of the trial court that affirmed the administrative determination that he was fired from Health Research International ("HRI") for just cause and denied him unemployment compensation. For the reasons set forth below, we affirm.
 {¶ 2} On February 11, 2005, HRI, a medical market research company, offered Lyons a research analyst position with a starting salary of $30,000 in a letter which provided, in relevant part, "The first months of your employment will be spent in formal training * **. Following this initial program, on-the-job training for the Research Analyst position typically continues for several months to round out your skills. Because of these intensive training requirements, the first nine (9) months of your employment will be a probationary period to allow HRI to assess your response to training and work progress." Evaluations would then be conducted at three-month intervals.
 {¶ 3} On February 28, 2005, Lyons began work. He was discharged on October 14, 2005, filed for unemployment compensation the next day, listing lack of work as the reason for his separation from employment. In its response to the board's request for information, HRI indicated that Lyons was discharged for "non-performance of duties." According to HRI, Lyons performed well in the initial three-month period but his performance declined sharply thereafter. At his second three-month review, HRI indicated that his performance was inadequate and that he would be terminated. Lyons requested a second chance, but according to HRI, he did not *Page 4 
thereafter improve. In opposition, Lyons noted that he received "excellent" ratings in many categories of performance in his first review. He asserted that the job requirements, particularly start time, changed and this change was not clearly explained to him until after he was discharged.
 {¶ 4} The Director of Ohio Job and Family Services determined that Lyons was discharged for just cause. This finding was affirmed upon redetermination. Lyons commenced an additional appeal to the Review Commission.
 {¶ 5} The matter proceeded to a hearing before the Review Commission which commenced on August 8, 2006. The president of HRI and Lyons' immediate supervisor, Suzanne Ratzloff, testified that Lyons was required to conduct epidemiology research and examine various products and their comparative differences. For the first three weeks, he was shown company guidelines, protocols and worksheets but, according to Ratzloff, training was on-going. Lyons performed well in his first three months and received a 10% pay increase. He requested a 15% pay increase and the new job title of lead analyst.
 {¶ 6} Ratzloff further testified that Lyons' job performance declined sharply following his three-month review. According to this witness, his analysis was not sufficiently detailed and he did not request guidance. He requested and was given another chance but his performance did not improve. E-mails from project director Michael Austriaco to Ratzloff criticized Lyons' work for lack of depth and content. Austriaco also stated that he verbally discussed performance issues with Lyons. *Page 5 
 {¶ 7} She acknowledged that, of the four people who were hired with him, only two are still with HRI. She also noted that Lyons was frequently tardy but she could not say whether this interfered with his ability to perform the work. Rather, it seemed to show a loss of interest in the job. Following his termination, she opposed giving him unemployment compensation because she believed that she had given Lyons many chances. Finally, she explained that the job is extremely challenging, the company only hires "way above average workers" and it is difficult for the company to find appropriate employees. Extremely talented individuals, including a doctor, have had difficulty holding the position. Only two of the four people hired with Lyons are still employed at HRI.
 {¶ 8} Lyons testified that he was told that there would be formal training but it only lasted two or three days. He and a co-worker prepared seven drafts of a document but Austriaco was still dissatisfied. Ratzloff was dissatisfied with another project but he assisted her in revising it. He also asserted that he told Ratzoff that he had some health issues and she replied that the company "could not afford to have people with health problems." He proffered a statement from a co-employee who had also been terminated which indicated that there was minimal training and inadequate employee feedback. Finally he stated that, on the date of his termination, he was late because his car had been vandalized and he filed a police report. At this time, Ratzloff was upset with him and did not seek to look at the current status of his work. Finally, according to Lyons, Ratzoff told him that he could *Page 6 
indicate that he was being terminated due to lack of work, but she later denied making this statement.
 {¶ 9} The Review Commission concluded that Lyons was unsuited for the position and therefore terminated for just cause. The commission denied further review on December 7, 2006.
 {¶ 10} On January 4, 2007, Lyons appealed to the court of common pleas pursuant to R.C. 4141.282. Lyons challenged the no just cause determination and also raised various evidentiary objections. The trial court concluded that the decision reached by the Review Commission was not unlawful, unreasonable or against the manifest weight of the evidence. He now appeals and assigns four errors for our review.
 {¶ 11} The Claimant's first and second assignments of error and state:
 {¶ 12} "The hearing officer's opinion is unreasonable and against the manifest weight of the evidence by finding the employer terminated Lyons for just cause as the employer testified that the position requires extraordinarily high standards, and because most employees cannot meet these standards."
 {¶ 13} "The hearing officer's opinion is unlawful because the hearing officer considered reasons offered by the employer that were not the `actual reasons' given for appellant's termination." *Page 7 
 {¶ 14} Pursuant to R.C. 4141.29(D), a claimant who "has been discharged for just cause in connection with his [or her] work" is not entitled to unemployment compensation benefits.
 {¶ 15} "Just cause" is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. Whether just cause exists depends on the unique factual circumstances of each case. Gregg v. SBC Ameritech, Franklin App. No. 03AP-429,2004-Ohio-1061, citing Irvine v. Unempl. Comp. Bd. of Review(1985), 19 Ohio St.3d 15, 17, 482 N.E.2d 587.
 {¶ 16} Unsuitability for a position constitutes fault sufficient to support a just cause determination. Tzangas, Plakas Mannos v.Administrator, Ohio Bureau of Employment Servs., 73 Ohio St. 3d 694,1995-Ohio-206, 653 N.E.2d 1207, paragraph three of the syllabus. An employer may properly find an employee unsuitable for the required work, and thus to be at fault, when: (1) the employee does not perform the required work, (2) the employer made known its expectations of the employee at the time of hiring, (3) the expectations were reasonable, and (4) the requirements of the job did not change since the date of the original hiring for that particular position. Tzangas, supra. Unsuitability may be found where the requirements of the job are extremely stringent. Id. (Unsuitability found where the position required rapid and errorless typing.)
 {¶ 17} A reviewing court must affirm the decision of the commission unless it was unlawful, unreasonable, or against the manifest weight of the evidence. *Page 8 Tzangas, Plakas Mannos, supra. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." Irvine v. Unemployment Comp. Bd. of Review, supra.
 {¶ 18} Pursuant to R.C. 4141.28(O), the statute setting forth the appeals process for unemployment compensation cases, there is no distinction between the scope of review of common pleas courts and appellate courts.
 {¶ 19} Applying the foregoing, we concur with the trial court's conclusion that the decision reached by the Review commission was not unlawful, unreasonable or against the manifest weight of the evidence. The evidence demonstrated that the position is extremely challenging. It is undisputed that the company only hires "way above average workers" and it is difficult for the company to find appropriate employees. Extremely talented individuals including a doctor have had difficulty holding the position. Only two of the four people hired with Lyons were still employed at HRI at the time of the hearing. Moreover, the evidence demonstrated that the employee, although the claimant is extremely intelligent and well-educated, could not complete many of the assignments to the employer's satisfaction. The stringent job requirements do not bar the determination of unsuitability.Tzangas, supra. In addition, the employer's expectations were made known to Lyons at the time he was hired, the expectations, though high, are reasonable in light of the nature of the position and the requirements of the job did not change. In this connection, the evidence discounted reference to the tardiness issue which was *Page 9 
raised at the end of the employment since there is no indication that this was the reason for the termination. Although the claimant believed that additional training should have been provided, we cannot say, from the record presented that this renders the decision unlawful. Claimant held the position for approximately eight months, his work was critiqued in a detailed way and personnel was available to answer questions. The first assignment of error is therefore without merit. As to the claimant's additional contention that other reasons for the termination were offered at the hearing, it is clear to us that the focus remained at all times on the issues of suitability for the position and just cause for termination. The evidence of project omissions and the issue of computer usage were offered to support the claim of unsuitability as the employer maintained that Lyons had lost interest in the position and did not seek sufficient input from his superiors in preparing his analyses. The evidence as to these side issues does not render the decision reached by the review commission unlawful, unreasonable or against the manifest weight of the evidence.
 {¶ 20} For his third assignment of error, Lyons asserts:
 {¶ 21} "Appellant is entitled to a de novo hearing because the appellate record is incomplete due to an inaudible recording, an incomplete transcript, and subpeonaed exhibits that are not in the record."
 {¶ 22} Within this assignment of error, Lyons asserts that the record is deficient because there are numerous portions of the transcript which are listed as "inaudible" and in other instances ellipses are used to denote missing testimony. Pursuant *Page 10 
to R.C. 2506.03, that the trial court "shall be confined to the transcript [as] filed * * * unless it appears, on the face of that transcript" or by affidavit filed by the appellant, that one of the following applies:
 {¶ 23} "(1) [t]he transcript does not contain a report of all evidence admitted or proffered by the appellant. * * *." Bemak v. Dir., Ohio Job Family Servs., Cuyahoga App. No. 89616, 2008-Ohio-906.
 {¶ 24} Before any deficiencies listed in R.C. 2506.03 may be cured at the common pleas level, the statute specifically requires that said deficiencies must either appear on the face of the transcript or be brought to the attention of the court by affidavit. Id., citingSchoell v. Sheboy (1973), 34 Ohio App.2d 168, 172, 296 N.E.2d 842. InBemak, portions of the transcript were denoted as inaudible and the claimant asserted that this rendered the administrative file incomplete. The court rejected this contention because the claimant filed no affidavit of deficiency with the trial court and the court determined that there were no material deficiencies on the face of the transcript.
 {¶ 25} In this case, there were portions of the record that contained ellipses. It is unclear whether this marked stoppages in the witnesses' testimony or breaks in the record. Other portions were identified as inaudible. Viewing the record in total, we cannot say that the record is deficient as a matter of law. Cf. In re C.S., Summit App. Nos. 04CA0044 and 04CA0045, 2004-Ohio-6078. Moreover, claimant lodged *Page 11 
no objection to the record until now, and has not identified what should be added. The portion of the assignment of error has been waived.
 {¶ 26} As to the subpoenaed documents, the record concludes that the documents going to the central issue of unsuitability were in fact provided and that the claimant wanted extraneous documents going to other issues such as tardiness, Ratzloff's temper and other issues which were not essential to the agency's determination. Harrison v. PennTraffic Co., Franklin App. No. 04AP-728, 2005-Ohio-638 ("As the hearing officer noted repeatedly, the only issue before the commission was whether just cause existed to discharge appellant. It is not clear that all of the requested documents were pertinent to that determination."). This portion of the assigned error is without merit.
 {¶ 27} This assignment of error is overruled.
Affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 12 
PATRICIA ANN BLACKMON, P.J., CONCURS
 MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY *Page 1