[Cite as *Williams v. Ohio Dept. of Job & Family Servs.*, 2013-Ohio-4159.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael Williams, | : | |
| Appellant-Appellant, | : | |
| | : | No. 13AP-312 |
| v. | : | (C.P.C. No. 12CV-14486) |
| Ohio Department of Job & Family Services et al., | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on September 24, 2013

*Saia & Piatt, Inc.*, and *Lisa A. Wafer*, for appellant.

*Michael DeWine*, Attorney General, and *Yvonne Tertel*, for appellee Ohio Department of Job & Family Services.

*Fisher & Phillips LLP, Daniel P. O'Brien, James D. Kurek*, and *Nicole H. Farley*, for appellee Bob Caldwell Dodge Country, Inc.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} Michael Williams, appellant, has filed an appeal from the judgment of the Franklin County Court of Common Pleas, in which the court affirmed the decision of the Unemployment Compensation Review Commission ("commission"), a division of the Ohio Department of Job & Family Services ("ODJFS"), appellee. In its decision, the commission found appellant was not entitled to receive unemployment benefits.

{¶ 2}   The underlying facts will be discussed in more detail in our discussion of the assignments of error. On March 12, 2012, appellant was terminated from his position as a sales associate with Bob Caldwell Dodge Country, Inc. ("Caldwell"), appellee. The termination was based upon three grounds: (1) lying to Caldwell regarding the reason he requested leave on March 6 and 9, 2012, which Caldwell claimed appellant said was to care for a sick uncle but was actually to go on a trip to Las Vegas, (2) insubordination, which arose from appellant's failure to leave the building upon the request of Jon Eplin, the finance manager, after a March 10, 2012 confrontation with Eplin regarding the March 6 and 9, 2012 leave, and (3) appellant's failure to properly maintain his "green book," which is a book that sales associates use to log their sales contacts.

{¶ 3}   On April 5, 2012, appellant filed an application for unemployment compensation benefits. On April 16, 2012, ODJFS denied the application. On May 29, 2012, ODJFS's decision was reversed upon redetermination. Caldwell appealed. On July 3, 2012, the director of ODJFS affirmed the reversal and granted appellant unemployment compensation benefits. Caldwell appealed the director's determination, and a hearing was held by a commission hearing officer. On August 7, 2012, the hearing officer reversed the award of unemployment benefits, finding appellant had been discharged for just cause.

{¶ 4}   Appellant appealed the hearing officer's decision to the commission. The commission granted appellant's request for review and held a hearing before a hearing officer. On November 8, 2012, the hearing officer affirmed the August 7, 2012 decision to deny benefits to appellant, finding that Caldwell had discharged appellant for just cause.

{¶ 5}   Appellant appealed the commission's decision to the common pleas court. On March 14, 2013, the court issued a decision affirming the commission's decision to deny benefits to appellant. Appellant appeals the judgment of the common pleas court, asserting the following assignment of error:

> The review commission's decision that Appellant was fired for just cause was unlawful, unreasonable and against the manifest weight of the evidence and the lower court's affirmance of the same should be reversed.

{¶ 6} In appellant's sole assignment of error, appellant contests the trial court's affirmance of the commission's decision. A trial court and an appellate court employ the same, well-established standard of review in unemployment compensation appeals: "[A] reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697 (1995); R.C. 4141.282(H). When a reviewing court (whether a trial or appellate court) applies this standard, it may not make factual findings or determine witness credibility. *Irvine v. State Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18 (1985). Factual questions remain solely within the commission's province. *Tzangas* at 696. Thus, a reviewing court may not reverse the commission's decision simply because "reasonable minds might reach different conclusions." *Irvine* at 18. The focus of an appellate court when reviewing an unemployment compensation appeal is upon the commission's decision, not the trial court's decision. *Moore v. Comparison Mkt., Inc.*, 9th Dist. No. 23255, 2006-Ohio-6382, ¶ 8. In determining whether a commission's decision is or is not supported by the manifest weight of the evidence, this court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

{¶ 7} R.C. 4141.29 establishes the eligibility requirements for unemployment benefits. Pursuant to R.C. 4141.29(D)(2)(a), an individual is not eligible for unemployment compensation benefits if he or she has been "discharged for just cause in connection with the individual's work." The term "just cause" has been defined as " 'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Irvine* at 17, quoting *Peyton v. Sun T.V.*, 44 Ohio App.2d 10, 12 (10th Dist.1975). Further, "[f]ault on an employee's part is an essential component of a just-cause determination." *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 24. " '[T]he critical issue is not whether the employee has technically violated some company rule, but whether the employee by his actions [or inactions] demonstrated an unreasonable disregard for his employer's interests.' " *Gregg v. SBC*

*Ameritech*, 10th Dist. No. 03AP-429, 2004-Ohio-1061, ¶ 39, quoting *Piazza v. Ohio Bur. of Emp. Servs.*, 72 Ohio App.3d 353, 357 (8th Dist.1991).

{¶ 8}   Several witnesses presented testimony at one or both of the two hearings before the commission. Appellant testified that he called off work on March 5, 2012 because he had a doctor's appointment for pain associated with a February 2012 car accident. He did not give the doctor's excuse to anyone at Caldwell because no one asked for it, although Joe Reichley, the sales manager, told him to bring it in when he returned to work. He had prior approval to miss work on March 6 and 9, 2012, and he left for Las Vegas on March 6, 2012. When he returned to work on March 10, 2012, Eplin called him into his office. Appellant testified that the first thing Eplin said to him was, "[N]igger, who in the hell do you think you are? Who gave you that special schedule and who told you you could go to Vegas?" He denied he told Eplin that Eplin did not have the authority to discipline him. Instead, appellant testified that he immediately went to Reichley and told him that Eplin had attacked him. Reichley told him to go outside and get some air for 30 minutes. After doing so, appellant came back and told Eplin that he had specifically told Duane Dumas, the general manager, and the owner, Karen Caldwell, that he was going to Las Vegas, and everybody knew he was going to Las Vegas. He said he did not say anything to Eplin or anyone else about Eplin's use of a racial epithet because he was afraid of losing his job. Eplin then asked him if he had his green book, the use of which had been instituted about one month prior to keep track of sale contacts. He then retrieved the green book for Eplin. He denied Caldwell's claim that he had entered into the green book that he was "too busy" to record anything. Eplin said his completion of the green book was not good enough, he should leave, and Eplin would have to talk to Dumas about the situation later. Appellant asked Reichley, who was with them at the time, what he should do so Reichley telephoned Dumas who said appellant should leave. Appellant left work and returned two days later. On March 12, 2012, he met with Dumas, who told appellant that they had to let him go. Appellant tried to explain that he was granted leave for Las Vegas, everybody knew he was going to Las Vegas, and he had the doctor's excuse for March 5, 2012, but Dumas said he would still have to let him go. Appellant testified that he could not remember if he had told anyone that Eplin used the racial epithet prior to the hearing before the second hearing officer.

{¶ 9} Dumas, the general manager, testified that, prior to March 10, 2012, appellant had never discussed with him that he would be in Las Vegas on March 6 and 9, 2012. Dumas testified that Las Vegas was never mentioned, and appellant was granted the time off because he said he had to care for a sick uncle. When he met with appellant on March 12, 2012, appellant never claimed he had permission to go to Las Vegas and offered nothing in his defense. He said giving false reasons for requesting time off would be grounds for a written warning. Dumas said appellant was terminated because his green book was not up to date, he falsely called in sick the day before his leave was to begin, his leave was supposed to be to care for a sick uncle and not to go to Las Vegas, and his insubordination with Eplin in not leaving when ordered.

{¶ 10} Eplin testified that appellant had asked for a schedule change for March 6 and 9, 2012 to take care of his sick uncle. Eplin said that a schedule change like this is significant because it can leave them short-staffed without enough salespeople to handle customers. Eplin discovered via Facebook that appellant went to Las Vegas on those days instead. Eplin also saw on Facebook that appellant was getting a haircut and preparing for his Las Vegas trip on March 5, 2012, when he had called off sick. When appellant returned to work March 10, 2012, Eplin confronted him about the misrepresentations. Eplin was going to issue appellant a single written warning for misrepresenting why he needed time off between March 6 and 9, 2012, and misrepresenting that he was sick with back pain on March 5, 2012. After he called appellant into his office, appellant told him he had no authority to discuss the matter with him and walked out of Eplin's office. Eplin called appellant back to his office again 20 minutes later and told him he was going to issue him a written warning. Appellant told him the matter was none of his business and went to Reichley's office. Reichley told him to go on a walk to clear his head for 20 or 30 minutes. On his way out, Eplin told him not to return until the following Monday unless he could show him his green book. Appellant returned 60 to 90 minutes later with his green book. His green book indicated on every page that he was too busy to fill it out because he was talking to customers, except the last two pages, on which he had written that Eplin was making his job difficult. Eplin believed appellant had just filled in the book during the time he was gone from the building. He told appellant to leave the premises and return Monday to talk to Dumas. Appellant refused to leave. After Dumas was contacted via the

phone, Dumas told appellant to leave the premises and come back on March 12, 2012. Eplin said that the employee handbook provides that insubordination is a dischargeable offense, and there were four times appellant was insubordinate on March 10, 2012.

{¶ 11} Lori LaWarre, the human resources manager, testified that she was not at the business on March 10, 2012, and did not witness any events on that day. As of the date she submitted her statement to the commission, she had no personal knowledge as to whether protocol was followed in appellant's green book because she did not see the green book.

{¶ 12} Appellant first asserts that Caldwell acknowledged it did not intend to discharge him for missing work on March 5, 2012, but only to issue a written warning based upon appellant's alleged false reasons for taking time off from work; thus, it had no just cause to terminate him. With respect to his leave request on March 6 and 9, 2012, appellant contends that (1) Caldwell was aware of and approved his time off on March 6 and 9, 2012, (2) despite the fact that Caldwell maintained that they believed appellant requested the time off to care for a sick uncle, which appellant denies, Caldwell was not harmed by appellant's absence on these days, (3) there was no evidence that there was a company policy that employees had to tell Caldwell what they intended to do during their personal leave, and (4) the incident did not rise to the level that would support a finding that he acted in contravention of his employer's best interest.

{¶ 13} While we agree that Eplin said he was originally only going to give appellant a written warning, the other incidents of insubordination and misrepresentation that occurred after Eplin tried to discuss the matter with appellant gave Caldwell just cause to terminate him. Although appellant also urges that Caldwell was aware that he requested the time off work so he could go to Las Vegas, there is no evidence in the record to support appellant's claim. Eplin and Dumas both testified that appellant never told them that he was requesting the schedule change so he could go to Las Vegas and both agreed that appellant had told them that he needed the schedule change in order to care for a sick relative. This is an issue of credibility for the commission, which we cannot disturb upon review. The commission obviously believed the witnesses for Caldwell, and appellant gives us no reason to question that determination.

{¶ 14} Appellant's argument that Caldwell was not harmed by his absence on March 6 and 9, 2012 is also unpersuasive. Eplin testified that a schedule change, like that accommodated here, can result in being short-staffed, leaving customers without adequate service. Furthermore, although we agree that there was no evidence that there existed any company policy that employees had to inform Caldwell of what they intended to do during their personal leave, the problem here stems not particularly from appellant's activities during vacation but from the fact that appellant had to request a schedule change, and Caldwell accommodated that schedule change based upon the misrepresentation that appellant needed the change to care for his sick uncle. That appellant actively lied to his employer differentiates this case from one in which an employee merely desires to keep his personal vacation plans private, as appellant seeks to characterize the present case. Therefore, we find evidence supported the commission's determination with respect to appellant's misrepresentation of the reason for his vacation leave request. *See, e.g,. Oriana House, Inc. v. Terrell*, 9th Dist. No. 19550 (Mar. 15, 2000) (employee's lying regarding a work-related matter constituted just cause for her termination).

{¶ 15} Appellant next argues that Caldwell's complaints regarding his failure to properly maintain his green book were not supported by the evidence. Appellant asserts that he testified that he entered all of his sales contacts into the computer system, and the green book was only a backup system. He contests LaWarre's written statement that his green book did not meet company protocol because she admitted at trial that she had never seen his entire green book but had only seen the last two pages. Appellant also asserts that Caldwell never entered the green book into evidence to substantiate its claims that he had written "too busy to detail" instead of customer information.  There was no physical evidence of these green book pages themselves, and LaWarre testified that she had no personal knowledge of the green book entries. However, the commission was free to believe the testimony of Dumas, who said one of the grounds for termination was that appellant's green book was not updated, and Eplin, who testified that appellant had written on every page of his green book that he was too busy to fill it out because he was talking to customers, except the last two pages, on which appellant had written that Eplin was making his job difficult. Eplin thought appellant had filled out the green book during

the 90 minutes he had left the building. Also, regardless of whether the green book was only a backup system to the computer log, the testimony revealed that appellant was required to complete both the green book and the computer log and failed to do so honestly and accurately. Falsifying work-related records contrary to the employer's policy may constitute just cause. *See, e.g.*, *Hunt v. Ohio Dept. of Job & Family Servs.*, 5th Dist. No. 12CAH040024, 2012-Ohio-4359 (falsifying driver logs contrary to employer's policy and law constituted just cause for discharge). We find the record provided sufficient evidence to demonstrate appellant failed to complete the green book as required.

{¶ 16} Appellant next argues that Caldwell's contention that his insubordination toward Eplin was the basis for his firing and provided just cause was not supported by the record. Appellant contends that Dumas testified that the insubordination occurred when appellant failed to follow Eplin's order that he leave the premises. However, after his direct supervisor suggested that he call Dumas, and Dumas subsequently told him that he should leave work for the day, he complied. Appellant contends his failure to exit the building immediately did not rise to the level that would support a finding he was acting in contravention of his employer's best interest.

{¶ 17} Appellant's testimony and the testimony of Eplin differed as to how the events of March 10, 2012 unfolded. Appellant's testimony shifts the source of acrimony and the blame for the conflict to Eplin. Appellant claimed that Eplin called him a racial name, denied that he ever told Eplin he did not have the authority to discipline him, never mentioned that he twice walked out of the meeting with Eplin, told Reichley that Eplin attacked him, and denied that he wrote in the green book that he was too busy to make any entries in it. Eplin's testimony, however, portrays appellant as angry and defensive when confronted about the vacation, and appellant's behavior worsened from that point. Eplin testified that on two separate occasions, appellant said his vacation was none of Eplin's business, that Eplin had no authority to discipline him, and walked out of Eplin's office. Eplin also said that when appellant brought him his green book after having been out of the building for 60 to 90 minutes, Eplin found it was not properly filled out and told appellant to leave, but he refused. Therefore, Eplin's testimony shows that his request for appellant to leave the premises was the culmination of other acts of insubordination and appellant's hostile behavior. Although appellant does not believe his failure to follow

the order of Eplin to leave the premises rose to the level of being in contravention of the employer's best interest, Eplin testified that the employee handbook provides that insubordination is a dischargeable offense, and Eplin believed this act of insubordination was only one of four incidents of insubordination that day. Willfully refusing to follow a direct order of superiors has been deemed insubordination and sufficient justification for termination. *Watson v. Ohio Home Health Care*, 2d Dist. No. 22837, 2009-Ohio-537. Furthermore, refusing to leave work after being instructed to do so has been found to support a finding that the employee's conduct disrupted work and constituted insubordination. *See Davis v. Original DiCarlo's Pizza Crust Co.*, 7th Dist No. 04-JE-39, 2005-Ohio-2535, ¶ 21. The commission here obviously believed appellant's act of insubordination was sufficient for termination for just cause and, especially when coupled with appellant's bad behavior and insubordination prior to his final act of insubordination, we find there was evidence from Eplin's testimony to support the commission's conclusion. *See Summitville Tiles, Inc. v. Dir., Ohio Dept. of Job & Family Servs.*, 7th Dist. No. 01-CO-17, 2002-Ohio-3004, ¶ 17, citing *Irvine* at 17 (finding what constitutes just cause is a question of fact exclusively the province of the commission; a reviewing court must ascertain only whether it is supported by the record). For the above reasons, appellant's assignment of error is overruled.

{¶ 18} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER and T. BRYANT, JJ., concur.

T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____