DECISION AND JUDGMENT ENTRY
{¶ 1} Paul David Crisp appeals the Scioto County Court of Common Pleas' judgment to affirm the decision of the Unemployment Compensation Review Commission ("the Commission") denying him unemployment benefits. The Commission found Crisp ineligible for unemployment benefits because Scioto Residential Services ("SRS") terminated his employment for just cause. Crisp argues that the Commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence and that the trial court erred in holding otherwise. Because we find that some competent, credible evidence supports the decision of the Commission, we disagree. Accordingly, we affirm the judgment.
 I. {¶ 2} Crisp first began working for SRS in 1996. He completed his training program in June 1996 and was due to begin working full time in July 1996. However, before Crisp could start full-time work, he was injured in an automobile accident. As a result, Crisp withdrew his employment, but returned to work in November 1996. The duration of Crisp's continuous employment after November 1996 is not clear, although the record reveals that, at some point, Crisp again left the employ of SRS and that he returned to work in October 2001 as a direct care service provider. SRS terminated Crisp's employment on June 12, 2002, in part, for failure to properly administer medications as prescribed.
 {¶ 3} On June 25, 2002, Crisp filed for unemployment benefits with the Ohio Department of Job and Family Services (ODJFS). ODJFS denied Crisp's claim on the basis that SRS terminated his employment for just cause. Before the final decision, SRS provided ODJFS with a copy of its company discipline procedures and policy and all documentation pertaining to Crisp's disciplinary problems. The documentation revealed that SRS repeatedly issued written warnings to Crisp for his failure to properly administer medications to resident patients. SRS warned Crisp of his inadequate job performance in this regard on March 25, 1998; April 22, 1998; July 14, 1998; October 20, 1998; August 9, 1999; and November 11, 2000. On each of these dates, SRS served Crisp with documented warnings for failing to properly administer medications in compliance with Section 6.03(B)(20) of the SRS Personnel Policies Manual. In addition, SRS gave Crisp documented warnings for violating Section 6.03(A)(6) by failing to properly sign patient medication sheets. Crisp also received several worker's comments, counseling statements, and comments on worker performance for these violations and others. For the November 11, 2000 violation, SRS's registered nurse revoked Crisp's delegation and SRS required him to attend delegated nursing classes for recertification.[2]
 {¶ 4} On April 16, 2002, Crisp committed another medication error in violation of Section 6.03(B)(20). SRS's registered nurse again revoked Crisp's delegation. On June 12, 2002, SRS terminated Crisp's employment based upon this violation. While SRS cited additional reasons for the termination, we focus only on his violations of Section 6.03(B)(20) for reasons clarified below.
 {¶ 5} In the termination letter, SRS stated: "You have had an ongoing significant problem with properly administering medications to clients [in violation of Section 6.03(B)(20)]. You received written disciplinary action in regard to this violation on 9-10-00, 10-4-00, 11-11-00, 11-12-00, 1-15-02, and 4-17-02. On 4-17-02 the Registered Nurse with SRS pulled your delegation certification. Upon her review of the incident on 4-16-02 and historical medication administration errors she has decided to not offer you retraining. This results in an additional violation of personnel policy. Section 6.03 Work Rules B 15 Failure tomaintain appropriate license or certification positions." (Emphasis in original)
 {¶ 6} Under the SRS Personnel Policy Manual, all violations of Section 6.03(B) are considered major violations subjecting an employee to the risk of suspension without pay and possible termination. Section 6.02(A) sets forth SRS's progressive disciplinary policy: "1. As soon as a poor record becomes apparent, the employee shall be given verbal counseling along with written notice on the form "Comment on Worker Performance" by his/her immediate supervisor. * * * 2. If the problem continues, a second warning shall be given in the form of a written "Counseling Statement" * * * 3. Continued poor performance will result in written notice, prepared on letterhead, that the employee's job will be terminated if the problem continues. This Documented Warning will be signed by the Human Resources Director or Executive Director and the immediate supervisor * * * 4. Continued failure in job performance will result in termination of the employee by the Human Resources Director or Executive Director. This statement will be prepared on letterhead and will be signed and delivered by the Human Resources Director or Executive Director and immediate supervisor." From 1996 to June 2002, SRS gave Crisp two comments on worker performance (Step 1), two counseling statements (Step 2), and eight Documented Warnings (Step 3). The termination letter dated June 12, 2002 constitutes the written statement on company letterhead (Step 4).
 {¶ 7} Crisp appealed the ODJFS decision denying him unemployment benefits to the Director of ODJFS. He claimed that SRS failed to follow its discipline policy. Specifically, Crisp claimed that the SRS policy provided for termination of employment only if the registered nurse revoked his delegation three times. The Director affirmed the initial determination. Crisp appealed the Director's Redetermination decision. ODJFS transferred this appeal to the Commission.
 {¶ 8} The Commission held a hearing on the matter. Crisp was the only party to attend the hearing. The hearing officer questioned Crisp regarding his employment history and termination. Crisp claimed that: (1) his failures to properly dispense medication to patients was only a minor violation of the company's personnel policy; (2) any warnings or discipline actions prior to October 2001 were irrelevant to the Commission's decision; (3) SRS terminated his employment because he filed a worker's compensation claim against the company; and (4) other employees committed the same violations and were not punished or terminated.
 {¶ 9} The Commission affirmed the Director's Redetermination decision. In its written decision, the Commission found that SRS issued warnings to Crisp on February 23, 2000; November, 12, 2000; December 5, 2000; and April 16, 2002 for various failures to properly administer medications as prescribed. The Commission also found that the only basis for Crisp's termination that SRS supported with sufficient evidence was Crisp's numerous violations of Section 6.03(B)(20). Finally, the Commission reasoned that "[a]lthough scant evidence [was] presented by either side, a preponderance of the evidence demonstrates that [Crisp] failed to properly dispense medications. * * * Under the circumstances of this case, it will be held that [Crisp] was discharged for just cause in connection with work * * *."
 {¶ 10} Crisp appealed the Commission's decision to the Scioto County Court of Common Pleas pursuant to R.C. 4141.282. Crisp argued that the basis for the Commission's decision rested on inadmissible hearsay evidence. In its judgment entry, the trial court affirmed the Commission's decision affirming ODJFS's denial of unemployment benefits to Crisp. The trial court found "that the certified record of the Review Commission revealed that [Crisp] was progressively disciplined by [SRS] between 1998 and 2002 for inadequate job performance, major disciplinary violations and failure to act in the best interests of his employer. Further, that on many occasions he failed to administer medication as prescribed." The trial court also found "that hearsay evidence is legally admissible evidence in the context of an Unemployment Compensation Hearing because the hearing officers for the Review Commission are not bound by the technical rules of evidence or procedure under Ohio Revised Code 4141.28(1)(3)(2) (sic)." The trial court concluded that the hearing officers determination that SRS terminated Crisp's employment for just cause was not unlawful, unreasonable, or against the manifest weight of the evidence.
 {¶ 11} Crisp appeals and raises the following assignment of error: "The State of Ohio Compensation Review Commission was wrong to deny Mr. Crisp unemployment compensation benefits for wilful neglect of duty wherefore Mr. Crisp's vision condition was the reason for the work error that resulted in his discharge. Not his fault." (sic)
 II. {¶ 12} Upon appeal of an Unemployment Compensation Review Commission decision, the reviewing court, whether a trial court or court of appeals, must affirm the Commission's decision unless the decision is unlawful, unreasonable, or against the manifest weight of the evidence. See R.C. 4141.28(O)(1); Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv., 73 Ohio St.3d 694, 696,1995-Ohio-206. Under this standard of review, the reviewing court must affirm the Commission's finding if some competent, credible evidence in the record supports it. Central Ohio JointVocational School Dist. Bd. of Educ. v. Administrator (1986),21 Ohio St.3d 5, 8. On close questions, "where the board might reasonably decide either way, the courts have no authority to upset the board's decision." Irvine v. State Unemployment Comp.Bd. of Review (1985), 19 Ohio St.3d 15, 18, citing CharlesLivingston Sons, Inc. v. Constance (1961), 115 Ohio App. 437.
 {¶ 13} Under R.C. 4141.29(D)(2)(a), an employee who is discharged from employment for just cause is ineligible to receive unemployment benefits. Ford Motor Co. v. Ohio Bur. ofEmp. Servs. (1991), 59 Ohio St.3d 188, 189. "[J]ust cause" is that which would lead a person of ordinary intelligence to conclude that the circumstances justify terminating the employment relationship. Durgan v. Ohio Bd. of Emp. Servs.
(1996), 110 Ohio App.3d 545, 549; Irvine at 17. In determining whether just cause exists in a particular case, the Commission must consider whether granting benefits will serve the underlying purpose of unemployment compensation, to provide financial assistance to individuals who become unemployed through no fault of their own. Tzangas at 697; Krawczyszyn v. Ohio Bur. of Emp.Servs. (1989), 54 Ohio App.3d 35, 38. The Commission must determine just cause on a case by case basis, because "whether just cause exists necessarily depends upon the unique factual considerations of the particular case." Irvine at 17.
 {¶ 14} A hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general.Owens v. Admr. Ohio Bur. of Emp. Servs. (1999),135 Ohio App.3d 217, 220; Nordonia Hills City School Dist. Bd. of Edn. v.Unemployment Comp. Bd. of Rev. (1983), 11 Ohio App.3d 189, 190. The object of the hearing is to ascertain the facts that may or may not entitle the claimant to unemployment benefits. See R.C.4141.28(J); Owens at 220, citing Simon v. Lake Geauga PrintingCo. (1982), 69 Ohio St.2d 41, 43; Nordonia Hills at 190. The hearing officer is not bound by "common law or statutory rules of evidence or by technical or formal rules of procedure." R.C.4141.28(J); Simon at 43. "The aim of this portion of R.C.4141.28(J) is to avoid the rigid formality imposed by technical rules of evidence, while constructing an efficient method for ascertaining a claimant's entitlement to unemployment compensation benefits." Simon at 43. Therefore, hearsay evidence which is inadmissible in a court or hearing required to apply stringent rules of evidence, is admissible in the Commission's hearings on whether to affirm or reverse a decision granting or denying unemployment benefits. Id. at 44.
 {¶ 15} In his sole assignment of error, Crisp urges this court to reverse the decision of the trial court for numerous reasons. Crisp claims that any allegations that (1) he violated Section 6.03(A)(2) of the SRS Personnel Policy by failing to work cooperatively, (2) he violated Section 6.03(A)(12) by failing to follow his work schedule and work the hours specified, (3) he violated Section 6.03(B)(20) by failing to properly administer medications as prescribed are inadmissible hearsay, unsupported by proper documentation. In further support of his third claim, Crisp alleges that: (1) his violation in administering medications on April 16, 2002 was merely a minor violation; (2) his poor vision caused the violation and, therefore, it was not willful; (3) the registered nurse abused her discretion in revoking his delegation and refusing to retrain him so that he could regain his delegation; (4) a verbal policy permitted an employee to lose his delegation three times before termination could occur; (5) SRS failed to give him a performance evaluation in accordance with its personnel policy manual; and (6) the hearing officer improperly considered irrelevant evidence of disciplinary actions taken before October 2001.
 {¶ 16} In addition, Crisp claims that SRS failed to follow its own Personnel Policy Manual in regard to his discipline. Specifically, Crisp alleges that SRS: (1) failed to suspend him for his violation prior to termination; (2) failed to provide documentation that his delegation was permanently revoked; (3) failed to properly give him a written notice of termination; and (4) that the Human Resources Director, rather than his immediate supervisor or the registered nurse, made the decision to terminate his employment.
 {¶ 17} We decline to address Crisp's arguments that the evidence of alleged violations of SRS Personnel Policy Rules Sections 6.03(A)(2) and (A)(12) was inadmissible hearsay. Crisp failed to raise this argument at the Commission hearing below.Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 220. Moreover, these arguments are not relevant to this appeal because the Commission specifically found that SRS submitted insufficient evidence to support these allegations as bases for Crisp's termination.
 {¶ 18} Similarly, Crisp failed to argue below that SRS failed to follow its personnel policy in terminating his employment. Therefore, we decline to address that argument here.
 {¶ 19} Thus, the only remaining issues are: (1) whether the Commission improperly considered inadmissible hearsay evidence of Crisp's Section 6.03(B)(20) violation; (2) whether the Commission improperly found the violation to be major rather than minor; (3) whether Crisp's poor vision caused the violation and negates the willfulness of any alleged violation; (4) whether the evidence before the Commission proved that Crisp's delegation was permanently revoked; (5) whether a verbal policy required Crisp to lose his delegation three times before SRS could terminate him; and (6) whether the Commission improperly considered evidence of disciplinary actions prior to October 2001.
 {¶ 20} Crisp's argument that any evidence of his Section 6.03(B)(20) violation constitutes inadmissible hearsay evidence is without merit. The Commission is not bound by stringent rules of evidence and, therefore, may consider hearsay evidence.Simon at 44.
 {¶ 21} Whether Crisp's violation constituted a major or minor violation of SRS policy is a question of fact. A reviewing court may not substitute its judgment for that of the trier of fact.Simon at 45. Both trial and appellate courts are limited to determining whether the evidence supports the Commission's decision and may not make factual determinations. Irvine at 18. Here, the SRS Personnel Policy Manual specifically states that all violations of Section 6.03(B) are major violations subjecting employees to suspension without pay and possible termination. Accordingly, the Commission's factual determination that Crisp's violation of Section 6.03(B)(20) constituted a major violation is supported by some competent, credible evidence. Therefore, this argument is also without merit.
 {¶ 22} Crisp also argues that his poor vision caused him to improperly administer medications as prescribed. He claims that because a health problem caused the violation, it was not a willful violation. Crisp basically asserts that in order for a just cause termination to occur, some fault on the part of the employee must exist. Whether a termination is for just cause depends upon the factual circumstances of each case. Irvine at 17. Just cause is defined as that which would lead a person of ordinary intelligence to conclude that the circumstances justify terminating the employment relationship. Durgan,110 Ohio App.3d at 549. If an employee is at fault for the termination, he is ineligible for unemployment benefits because just cause exists for the termination. Tzangas, 73 Ohio St.3d at 697-698. "Thus, fault is essential to the unique chemistry of a just cause termination." Id. However, a "willful or heedless disgregard of duty or violation of [employer] instructions" is not required to satisfy the fault requirement. Id. at 698. As the Supreme Court of Ohio noted in Tzangas: "There is little practical difference between an employee who will not perform her job correctly and one who cannot perform her job correctly. In either case, the performance of the employee is deficient. That deficiency, which does not result from any outside economic factor, constitutes fault on the employee's behalf." Id. at 698. Here, Crisp claims that he could not properly perform the administration of medications as prescribed because of his vision problems. This constitutes fault on his part even though it may not be a willful act. Therefore, this argument is without merit.
 {¶ 23} Crisp also contends that the Commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence because the record contains no documentation that the registered nurse permanently revoked his delegation. Crisp argues that the Commission disregarded his testimony that the registered nurse told him that, if it were her decision, she would allow him to take additional training courses in order to have his delegation reinstated. However, in the termination letter, SRS specifically states that the registered nurse chose not to offer him retraining. Here, whether the registered nurse permanently revoked Crisp's delegation was a question of fact. As a reviewing court, we are not permitted to substitute our judgment for that of the Commission. Simon, 69 Ohio St.2d at 45. "`The decision of purely factual questions is primarily within the province of the referee and the board of review.'" Id. at 45, quotingBrown-Brockmeyer Co. v. Roach (1947), 148 Ohio St. 511, 518. Moreover, "[w]here the board might reasonably decide either way, the courts have no authority to upset the [Commission's] decision." Irvine, 19 Ohio St.3d at 18, quoting CharlesLivingston Sons, Inc at 438. Here, the Commission was in the best position to judge whether the termination letter or Crisp's testimony was more credible. We cannot usurp the Commission's authority to decide questions of fact. Accordingly, this argument is without merit.
 {¶ 24} Next, Crisp argues that SRS violated its verbal policy of requiring an employee to lose his delegation three times before being terminated. However, the only evidence in the record regarding this verbal policy was Crisp's self-serving testimony. The record does reveal, however, the SRS written progressive discipline policy. Whether such a verbal policy existed is a question of fact and, as we have previously stated, we are without the authority to upset the Commission's findings of facts. While the Commission did not specifically address the question of the alleged verbal policy, this is not unlawful, unreasonable, or against the manifest weight of the evidence because the Commission was free to conclude that Crisp's testimony in that regard was not credible. Therefore, this argument is without merit.
 {¶ 25} Finally, Crisp argues that any evidence of disciplinary actions prior to October 2001 is irrelevant because they did not occur during a period of uninterrupted employment. However, as we have previously discussed, a hearing officer has broad discretion in accepting and rejecting evidence. Owens at 217, 220; Nordonia Hills at 190. The object of the hearing is to ascertain the facts that may or may not entitle the claimant to unemployment benefits. See R.C. 4141.28(J); Owens at 220, citing Simon at 43; Nordonia Hills at 190. In conducting the hearing, the hearing officer is not bound by "common law or statutory rules of evidence or by technical or formal rules of procedure." R.C. 4141.28(J); Simon at 43. Here, the hearing officer could reasonably have concluded that the disciplinary actions before October 2001 were relevant to the offense at issue because they involved similar infractions. Accordingly, it was not unlawful, unreasonable, or against the manifest weight of the evidence for the hearing officer to consider such disciplinary actions. Therefore, Crisp's final argument is without merit.
 {¶ 26} Based upon the foregoing, we conclude that the record contains some competent, credible evidence to support the Commission's decision to deny Crisp unemployment benefits. Therefore, the Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, we overrule Crisp's sole assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.
[2] The delegation allowed Crisp to dispense and administer medications to patients. The registered nurse enjoys broad discretion in revoking delegations pursuant to O.A.C. 4723-13-05(F).