[Cite as *Hartless v. Ohio Dept. of Job & Family Servs.*, 2011-Ohio-1374.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | | |
|---|---|---|---|
| TONYA M. HARTLESS, | : | | |
| | : | | |
| Appellant-Appellant, | : | Case No: 10CA27 | |
| | : | | |
| v. | : | | |
| | : | DECISION AND | |
| DIRECTOR, OHIO DEPARTMENT | : | JUDGMENT ENTRY | |
| OF JOB AND FAMILY SERVICES, et al., | : | | |
| | : | | |
| Appellees-Appellees. | : | File-stamped date: 3-21-11 | |

APPEARANCES:

Joshua M. Goodwin, Southeastern Ohio Legal Services, Chillicothe, Ohio, for Appellant.

Mike DeWine, Ohio Attorney General, and Patria V. Hoskins, Assistant Ohio Attorney General, Columbus, Ohio, for Appellee-Appellee, Director, Ohio Department of Job and Family Services.[1]

Kline, J.:

**{¶1}** Tonya M. Hartless (hereinafter "Hartless") applied for unemployment compensation benefits, but the Unemployment Compensation Review Commission (hereinafter the "Commission") disallowed her application. The Commission found that Hartless was terminated for just cause because of her multiple absences from work, and the Pickaway County Court of Common Pleas affirmed the Commission's decision. On appeal, Hartless argues that the Commission's decision is unlawful, unreasonable, and against the manifest weight of the evidence. Because some competent, credible

---

[1] Richard Cordray was the Ohio Attorney General when this appeal was filed.

evidence supports the Commission's decision, we disagree. Accordingly, we must affirm the judgment of the trial court.

I.

{¶2}      Hartless worked as a warehouse associate for MD Beauty, Inc., d/b/a Bare Escentuals Beauty, Inc. (hereinafter "Bare Escentuals"), which maintains a no-fault attendance policy. Under this policy, employees accrue "occurrences" for their absences from work. A missed day of work equals one occurrence, and half-occurrences are assessed for either arriving late to work or leaving work early. (A multiple-day absence counts as just one occurrence *if* an employee produces a doctor's excuse, but the multiple-day provision plays no part in the present case.) As Bare Escentuals employees accrue occurrences, they move through a standard, four-step disciplinary system. The first step is a warning, which employees receive after accruing three occurrences in a calendar year. After accruing six occurrences in a calendar year, employees are subject to the second step – a written warning. The third step is a final written warning and a three-day unpaid suspension, which employees receive after accruing nine occurrences in a calendar year. And finally, after accruing twelve occurrences in a calendar year, employees are subject to termination.

{¶3}      In 2009, Hartless accrued the following occurrences: a half-occurrence on February 5; full occurrences on February 9, February 18, and February 19; a half-occurrence on February 25; full occurrences on March 18 and April 14; half-occurrences on April 20 and April 24; full occurrences on May 8, May 12, and May 28; a half-occurrence on July 15; and full occurrences on July 27 and July 28. Hartless gave various reasons for her absences. For example, according to a Bare Escentuals

internal document, Hartless claimed (1) that her father-in-law was sick on February 19, (2) that her child was sick on March 18, and (3) that Hartless herself was sick on April 14.  Nevertheless, Hartless did not produce any documentation to verify these illnesses, and the Bare Escentuals file does not contain any doctor's excuses for Hartless.

{¶4}      As Hartless accrued occurrences, she moved through Bare Escentuals' standard-disciplinary process.  Hartless received a warning on February 20, a written warning on April 15, and a final written warning and suspension on May 15.  After her July 28 absence, Hartless had accrued 12.5 occurrences.  Then, on July 29 and July 30, Hartless "no called/no showed" – that is, she missed work without notifying Bare Escentuals that she would be absent.  This gave Hartless a total of 14.5 occurrences, and, as a result, Bare Escentuals fired her.

{¶5}      Hartless then applied for unemployment compensation benefits.  After an October 9, 2009 hearing, the Commission found that Hartless was terminated without just cause.  Bare Escentuals was not, however, properly notified of the October 9, 2009 hearing.  As a result, the Commission held another hearing on December 15, 2009.  At this second hearing, Bear Escentuals' Human Resources Coordinator testified about Bare Escentuals' attendance policy and Hartless's various absences.  In response, Hartless testified that she missed work either because of her own illnesses or to care for sick family members.

{¶6}      The Commission issued a decision on January 6, 2010.  According to the Commission, Hartless "arrived late, left early, or was absent on a regular basis. [Hartless] moved through all the steps of the employer's progressive discipline policy. At the end she was absent without notification on consecutive days.  The employer was

justified in terminating [Hartless's] employment.  It will be held that [Hartless] was discharged * * * for just cause in connection with work."  January 6, 2010 Decision at 3.  Thus, the Commission found that just cause existed for two reasons: (1) Hartless violated Bare Escentuals' attendance policy *and* (2) Hartless no called/no showed on July 29 and 30.  The Commission further found that Hartless "ha[d] been overpaid benefits to which she [was] not entitled, beginning with the week ending August 22, 2009, and ending with the week ending December 26, 2009[.]"  January 6, 2010 Decision at 3.  As a result, Hartless was ordered to repay the Commission $4,351.

{¶7}      Hartless appealed the Commission's just-cause determination to the Pickaway County Court of Common Pleas.  At the trial court level, Hartless did not dispute the accuracy of Bare Escentuals' attendance records or that she had accrued more than twelve occurrences.  Rather, Hartless claimed that she was entitled to unemployment benefits because she missed work for legitimate, bona fide reasons.

{¶8}      Additionally, Hartless argued that the Commission erred in relation to the July 29 and 30 no call/no show absences.  Hartless acknowledged that missing work on July 28 caused her to have 12.5 occurrences.  Hartless also acknowledged that she no called/no showed on July 29 and July 30.  Nevertheless, Hartless claimed that her actions were justified because of the rigid, unbending nature of Bare Escentuals' attendance policy.  During the second hearing, Hartless gave the following reason for her no call/no show absences: "I knew that I was terminated because they tell you, you hit twelve you're done."  Second Hearing Transcript at 16.  Furthermore, Bare Escentuals' Human Resources Coordinator testified that warehouse employees "are very well familiar with [Bare Escentuals'] occurrence policy so a lot of times[,] if they

know that they're at that twelfth occurrence[,] sometimes they don't bother to call in or show up to work.  Cause they know [they're] gonna be terminated."  Second Hearing Transcript at 11.  Therefore, at the trial court level, Hartless claimed that Bare Escentuals terminated her because of the July 28 absence, not because of the July 29 and 30 no calls/no shows.

{¶9}     To further support her arguments about the July 29 and 30 absences, Hartless pointed to the "Fact Finding Questions" filled out by Bare Escentuals.  One of the questions asked Bare Escentuals to "[d]escribe the final event that caused the discharge, including the date it occurred or was discovered by the company."  In response, Bare Escentuals wrote the following: "7-28-09 = Tonya's 12 Attendance Occurrence = Termination[.]"

{¶10}     Despite Hartless's various arguments, the trial court affirmed the Commission's decision.

{¶11}     In appealing the trial court's judgment, Hartless asserts the following two assignments of error: I. "The Hearing Officer's decision that the Employer, Bare Escentuals, had just cause for discharging Ms. Hartless is unlawful, unreasonable, and against the manifest weight of the evidence."  And, II. "The Hearing Officer failed to fully and fairly develop the record."

II.

{¶12}     Before addressing Hartless's assignments of error, we must note the following procedural deficiency.  In her appellate brief, Hartless has failed to separately argue her first-and-second assignments of error as required by App.R. 16(A)(7).  Instead, Hartless has presented just one argument in support of both assignments of

error.  And under App.R. 12(A)(2), we may choose to disregard any assignment of error that an appellant fails to separately argue.  Therefore, we could exercise our discretionary authority to summarily overrule Hartless's first-and-second assignments of error.  See *Newman v. Enriquez*, 171 Ohio App.3d 117, 2007-Ohio-1934, at ¶18; *Mtge. Electronic Registrations Sys. v. Mullins*, 161 Ohio App.3d 12, 2005-Ohio-2303, at ¶22, citing *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 186; *State v. Caldwell* (1992), 79 Ohio App.3d 667, 677, fn. 3.  We choose, however, to address Hartless's first-and-second assignments of error in the interest of justice.  Furthermore, we will address her first-and-second assignments of error together.

III.

**{¶13}**     On appeal, Hartless contends that the Commission's just-cause finding is unlawful, unreasonable, and against the manifest weight of the evidence.  Hartless also argues that, in making its just-cause determination, the Commission should not have considered her July 29 and 30 no call/no show absences.  We disagree, however, with both arguments.

**{¶14}**     When reviewing a Commission decision, we are "'required to focus on the decision of the [Commission], rather than that of the common pleas court[.]'"  *Klemencic v. Robinson Memorial Hosp.*, Summit App. No. 25293, 2010-Ohio-5108, at ¶7, quoting *Ro-Mai Industries, Inc. v. Weinberg*, 176 Ohio App.3d 151, 2008-Ohio-301, at ¶7.  We must affirm the Commission's decision unless the decision is unlawful, unreasonable, or against the manifest weight of the evidence.  See *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696, 1995-Ohio-206; *Klemencic* at ¶7; *Crisp v. Scioto Residential Servs., Inc.*, Scioto App. No. 03CA2918, 2004-Ohio-6349, at ¶12.

Under the manifest-weight-of-the-evidence standard, a reviewing court will affirm the Commission's finding if some competent, credible evidence supports that finding.  See *Central Ohio Joint Vocational School Dist. Bd. of Educ. v. Admr.* (1986), 21 Ohio St.3d 5, 8; *Crisp* at ¶12.  In reviewing cases "'where the [Commission] might reasonably decide either way, the courts have no authority to upset the [Commission's] decision.'" *Crisp* at ¶12, quoting *Irvine v. State Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18.

**{¶15}** "Under R.C. 4141.29(D)(2)(a), an employee who is discharged from employment for just cause is ineligible to receive unemployment benefits."  *Crisp* at ¶13, citing *Ford Motor Co. v. Ohio Bur. of Emp. Servs.* (1991), 59 Ohio St.3d 188, 189; see, also, *Klemencic* at ¶8.  "'[J]ust cause' is that which would lead a person of ordinary intelligence to conclude that the circumstances justify terminating the employment relationship."  *Crisp* at ¶13, citing *Durgan v. Ohio Bd. of Emp. Servs.* (1996), 110 Ohio App.3d 545, 549 (other citations omitted) (alteration sic).  "In order to receive unemployment compensation, the employee bears the burden of proof to establish that the employment termination was without just cause."  *Marchese Servs. v. Bradley*, Putnam App. No. 12-08-06, 2009-Ohio-2618, at ¶26 (citations omitted); *Brown v. SYSCO Food Servs. of Cincinnati, L.L.C.*, Scioto App. Nos. 09CA2175 & 09CA3276, 2009-Ohio-5536, at ¶20.  "The determination of whether just cause exists necessarily depends upon the unique factual considerations of [each] particular case."  *Irvine* at 17. And in determining whether just cause exists, the Commission must consider whether granting benefits would serve the underlying purpose of unemployment compensation – that is, providing financial assistance to individuals who become unemployed through

no fault of their own.  See *Tzangas* at 697; *Crisp* at ¶13; *Krawczyszyn v. Ohio Bur. of Emp. Servs.* (1989), 54 Ohio App.3d 35, 38.

**{¶16}**      "A hearing officer has broad discretion in accepting and rejecting evidence and in conducting the hearing in general."  *Crisp* at ¶14, citing *Owens v. Admr. Ohio Bur. of Emp. Servs.* (1999), 135 Ohio App.3d 217, 220; *Nordonia Hills City School Dist. Bd. of Edn. v. Unemployment Comp. Bd. of Rev.* (1983), 11 Ohio App.3d 189, 190. Furthermore, the hearing officer is not bound by "common law or statutory rules of evidence or by technical or formal rules of procedure."  R.C. 4141.281(C)(2); *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 43; see, generally, *Klemencic* at ¶9 (stating that "the Review Commission is permitted to consider hearsay testimony in making unemployment compensation decisions") (internal quotation omitted).  "The aim of this portion of R.C. [4141.281(C)(2)] is to avoid the rigid formality imposed by technical rules of evidence, while constructing an efficient method for ascertaining a claimant's entitlement to unemployment compensation benefits."  *Simon* at 43; *Crisp* at ¶14.

## A. The July 29 and 30 Absences

**{¶17}**      Initially, we will address two of Hartless's arguments about the July 29 and 30 no call/no show absences.  Hartless claims that Bare Escentuals did not consider the July 29 and 30 absences when it terminated her.  Instead, Hartless contends that she was actually fired for missing work on July 28 – the date on which she surpassed twelve occurrences.  As a result, Hartless argues that the Commission should not have considered the July 29 and 30 absences in its just-cause determination.  See, generally, *In re Claim of Guy*, 146 Ohio App.3d 20, 25, 2001-Ohio-3372 ("The hearing officer's

review is limited to considering the actual reason for a claimant's discharge[,] and [the hearing officer] shall not consider evidence of circumstances that were not relied upon by the employer in making the separation decision.") (citation omitted). At a minimum, Hartless believes that it is unclear whether Bare Escentuals actually considered the July 29 and 30 absences. Thus, in the alternative, Hartless argues that the present case should be remanded so that the hearing officer may, presumably, further develop the record.[2]

**{¶18}** Here, we cannot find that the Commission erred by considering the July 29 and 30 absences. This is so because some competent, credible evidence supports the Commission's finding that Bare Escentuals had considered the no call/no show absences when Bare Escentuals terminated Hartless. In making a just-cause determination, "the duty of the fact-finder is to weigh and consider the reliability of the evidence and the credibility of the witnesses." *Fisher v. Bill Lake Buick*, Cuyahoga App. No. 86338, 2006-Ohio-457, at ¶20, citing *Hansman v. Director, Ohio Dept. of Job & Family Servs.*, Butler App. No. CA2003-09-224, 2004-Ohio-505; *Simon* at 44. Furthermore, this court may not "make factual findings or determine the credibility of witnesses." *Hansman* at ¶5, citing *Tzangas* at 696. As a result, we may not "second-guess credibility determinations when reviewing a decision from the Unemployment

---

[2] This alternative argument appears to be the basis for the second assignment of error (which, as we already noted, Hartless failed to separately argue). In her appellate brief, Hartless claims the following: "Here, as in all unemployment compensation cases, the reasons upon which Bare Escentuals relied in deciding to discharge Ms. Hartless are crucial. If those reasons cannot be determined from the record, then the Hearing Officer failed to fully and fairly develop that record." Appellant's Brief at 16; see, also, R.C. 4141.281(C)(2) ("Hearing officers have an affirmative duty to question parties and witnesses in order to ascertain the relevant facts and to fully and fairly develop the record.").

Compensation Review Commission." *Brown* at ¶22; *Struthers v. Morell*, 164 Ohio App.3d 709, 2005-Ohio-6594, at ¶31 ("This court will not second-guess the [C]ommission regarding its factual finding as to why the mayor fired appellant."); *Vest v. Admr., Ohio Dept. of Job & Family Servs.*, Scioto No. 04CA2977, 2005-Ohio-6967, at ¶16 ("[D]eterminations of purely factual issues and witness credibility rest within [the Commission's] province.") (citation omitted).

**{¶19}**     Here, Bare Escentuals' Human Resources Coordinator testified that the July 29 and 30 absences played a part in the separation decision.  During the second hearing, the hearing officer asked if there was "any other information" relevant to Hartless's termination.  The Human Resources Coordinator replied, "[S]he called off sick with [a] headache [on July 27 and 28,] which after the 28th that put her at twelve and a half occurrences *and then on the 29th or 30th she didn't come to work or bother to call.*"  Second Hearing Transcript at 10-11 (emphasis added).  And when asked if there were "[a]ny other reasons for the separation that [the officer] should know about[,]" the Human Resources Coordinator replied that "the no calls[/]no shows two days in a row also serves for a termination."  Second Hearing Transcript at 11.  Therefore, the Human Resources Coordinator testified that Bare Escentuals had considered the July 29 and 30 absences when it terminated Hartless, and the hearing officer found this testimony to be credible.  We cannot second-guess the hearing officer's credibility determination, even if there is some evidence to show that the July 28 absence was "the final event that caused the discharge."

**{¶20}**     Accordingly, we find that the Commission did not err when it considered the July 29 and 30 absences.

## B. No Call/No Show Absences As Just Cause

**{¶21}** The Commission based its just-cause determination, in part, on Hartless being "absent without notification on consecutive days." Second Commission Decision at 3. And here, we cannot find that this portion of the Commission's determination is unlawful, unreasonable, or against the manifest weight of the evidence. Hartless had two no call/no show absences at the end of her tenure with Bare Escentuals, and Ohio courts have found that multiple no call/no show absences are a just cause for termination. See *Woodworth v. Ohio Dept. of Job & Family Servs.*, Cuyahoga App. No. 91601, 2009-Ohio-734, at ¶14 (finding that two no-show/no-call absences, along with other absences, constituted just cause under a no-fault attendance policy); *Peterson v. Director*, *Ohio Dept. of Job & Family Servs.*, Ross App. No. 03CA2738, 2004-Ohio-2030, at ¶36-41 (finding that six no call/no show absences constituted just cause for termination, even if the claimant was legitimately sick); *Rawson v. Ohio Edison Co.* (Mar. 19, 1996), Jefferson App. No. 94-J-73 (finding that, among other reasons, "being a no call/no show for three consecutive shifts" constituted just cause for termination). As we explained in *Peterson*, employers expect their employees "to report to work when scheduled. If [Hartless] was unable to report, [s]he should have at least informed [her] supervisor or foreman so other arrangements could be made." *Peterson* at ¶39.

**{¶22}** Claiming she had a reasonable belief that she would be fired for missing work on July 28, Hartless argues that she "was justified in not calling in on" July 29 and 30. Appellant's Brief at 16. And because she "had no reason to call in on July 29 and July 30," Hartless argues that the no calls/no shows did "not give Bare Escentuals just cause" to terminate her. Appellant's Brief at 17. We disagree. According to Bare

Escentuals, Hartless was scheduled to work on both July 29 and 30. Furthermore, there is no evidence that Bare Escentuals had made alternate arrangements in anticipation of Hartless being off the schedule. See *Peterson* at ¶39. Thus, even after considering the culture at Bare Escentuals, some competent, credible evidence supports the Commission's no call/no show findings. Bare Escentuals expected Hartless to be at work on those dates, and Hartless "demonstrated an unreasonable disregard for [her] employer's best interest when [s]he failed to report to work without calling." Id. The culture at Bare Escentuals may have caused Hartless to believe that she would be fired. But until Bare Escentuals actually fired her, it was not unreasonable for Bare Escentuals to expect that Hartless would report to work as scheduled.

**{¶23}** Accordingly, as it relates to Hartless's no call/no show absences, we cannot find that the Commission's just-cause determination is in error.

## C. The Bare Escentuals Attendance Policy

**{¶24}** Essentially, Bare Escentuals "operate[s] pursuant to what is commonly termed a no-fault attendance policy. The purpose behind this type of policy is to (1) provide the worker with control over his continued employment with the company, and (2) relieve the employer of the task of determining whether an employee has a valid or exculpating reason for absences." *Jones v. Admr., Ohio Bur. of Emp. Servs.*, Mahoning App. No. 99 C.A. 224, 2000-Ohio-2597 (citation omitted). Under Bare Escentuals' attendance policy, employees are allowed up to twelve occurrences per year. Employees receive occurrences for (1) being absent from work, (2) arriving late to work, and (3) leaving work early.

**{¶25}** "Where an employer fires an employee for excessive absenteeism under a no-fault policy, the employee may still be entitled to compensation if she can establish that her absences were the result of a bona fide illness." Id. Hartless concedes that she had more than twelve occurrences under the Bare Escentuals attendance policy. But on appeal, Hartless argues that her absences were either (1) the result of bona fide illnesses or (2) necessary to care for sick relatives. As a result, Hartless argues that she is entitled to unemployment compensation. See, generally, *Woodworth* at ¶16 ("Chronic and excessive absenteeism is generally considered to be just cause for discharge unless a bona fide illness excuses the absence.").

### D. The No-Fault Attendance Policy As Just Cause

**{¶26}** In addition to Hartless's no call/no show absences, the Commission based its just-cause determination on Hartless having "moved through all the steps of the employer's progressive discipline policy [i.e., the no-fault attendance policy]." January 6, 2010 Decision at 3. Here, we cannot find that this portion of the Commission's determination is unlawful, unreasonable, or against the manifest weight of the evidence. Again, we note that Hartless "bears the burden of proving that * * * she is entitled to unemployment compensation benefits." *Brown* at ¶20. And although she claims various illnesses, Hartless provided no documentation to establish that her absences were for legitimate, bona fide reasons. For example, Hartless did not produce any doctor's excuses, and the Bare Escentuals file does not contain any outside documentation related to Hartless's absences. Therefore, the Commission could have reasonably concluded that Hartless did not meet her burden.

**{¶27}** In support of her argument, Hartless points to a Bare Escentuals internal document called "Occurrences For Hartless, Tonya." This document lists all of Hartless's occurrences and, in some cases, the reasons for those occurrences. For example, the entry for "4/14/2009" lists the following: "Call Off *sick*[.]" (Emphasis sic.) According to Hartless, these entries demonstrate that her absences were for bona fide reasons. The Commission, however, apparently did not agree. And without additional documentation, we cannot say that these entries represent anything more than Hartless's *proffered reasons* for her absences. Thus, in considering whether she missed work for bona fide reasons, the hearing officer had little more to consider than Hartless's own testimony. Unfortunately for Hartless, the hearing officer was not swayed by her testimony, and we cannot second-guess the hearing officer's assessment of the evidence.

**{¶28}** The Commission made just one finding as to the reasons for Hartless's various absences – that is, Hartless was absent on July 27 and 28 with a headache. According to Hartless, this represents a bona fide reason for missing work, and, as a result, Bare Escentuals fired her without just cause. But even if the July 27 and 28 absences were for bona fide reasons, Hartless still had 12.5 occurrences as a result of the July 29 and 30 absences. Accordingly, the Commission could have lawfully concluded that Hartless was terminated for just cause even if the July 27 and 28 absences were for medically bona fide reasons.

**{¶29}** Accordingly, as it relates to Bare Escentuals' no-fault attendance policy, we cannot find that the Commission's just-cause determination is in error.

E. Conclusion

**{¶30}**     For the foregoing reasons, we overrule Hartless's two assignments of error. The Commission's decision is not unlawful, unreasonable, or against the manifest weight of the evidence.  Accordingly, we affirm the judgment of the trial court.


**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.


Abele, J. and McFarland, J.:  Concur in Judgment and Opinion.



For the Court


BY:_____
     Roger L. Kline, Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**