[Cite as *Folck v. Patton*, 2014-Ohio-2304.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

| | | |
|---|---|---|
| NEAL C. FOLCK | : | |
| | : | Appellate Case No. 2013-CA-105 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 12-CV-1120 |
| v. | : | |
| | : | |
| SYLVESTER PATTON, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of May, 2014.

. . . . . . . . . . .

NEAL C. FOLCK, 6447 Harbinger Lane, Dayton, Ohio 45449
        Plaintiff-Appellant, *pro se*

MICHAEL DEWINE, by ALAN SCHWEPE, Atty. Reg. #0012676, and YVONNE TERTEL, Atty. Reg. #0019033, Ohio Attorney General's Office, Health and Human Services Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215-3400
        Attorneys for Defendant-Appellee, Ohio Dept. Of Job and Family Services

. . . . . . . . . . . .

FAIN, J.

{¶ 1}     Appellant Neal Folck appeals from a judgment of the common pleas court

affirming a decision of the Unemployment Compensation Review Commission that he quit his job without just cause, and is therefore not entitled to unemployment benefits. For the reasons set forth below, we Affirm.

## I.  The Course of Proceedings

**{¶ 2}**  Folck was employed as a commissioned sales consultant with Keffer Volkswagen from January 31, 2012 through March 16, 2012, when he quit.

**{¶ 3}**  Folck applied for unemployment benefits in Case Number C2012-018500. In his application, Folck claimed that Keffer did not pay him in accord with the terms of his commission agreement. Specifically, he claimed that the commission agreement was changed, because Keffer hired too many sales personnel; other employees took his potential sales; he was not provided a share of "internet leads"; he was assigned non-commissionable tasks; and he had to split his commissions. In his application, Folck also claimed that he spoke to two sales managers on March 13, 2012, and that he spoke to the Floor Manager on March 16, telling the Floor Manager that he was "leaving and left without incident on 3/16/12." Folck also noted in is application that he spoke to the owner of Keffer after he quit.

**{¶ 4}**  Folck submitted copies of two of his pay stubs. One shows that from February 15 - 20, 2012, Folck was paid $718.47. The other stub shows that he was paid $47.17 for March 14 through 27. Keffer submitted a document reflecting that he had been paid $2,972.29 for the six weeks he worked.

**{¶ 5}**  The application was denied, upon a finding that the "facts establish that claimant did not discuss his/her objections with the employer or did not allow the employer

reasonable time to correct the situation." Folck's initial administrative appeal from the denial of his application resulted in an affirmance of the decision. Upon his further appeal, the matter was transferred to the Review Commission.

{¶ 6}  A telephonic hearing was held before a Commission Hearing Officer on August 27, 2012. During the hearing, evidence was submitted that the commission agreement provided that commissions were to be 25% of the commissionable gross, and that the minimum commission for new and used vehicle sales was $150 and $100, respectively. The agreement further provided in pertinent part:

Sales commissions will be paid on a bi-weekly basis based on commissions earned. * * * if no commissions are earned and fall below minimum wage for hours worked, the sales associate will receive the minimum wage times the clock hours actually worked. The shortfall in commissions will be carried forward and satisfied in future pay periods.

{¶ 7}  Folck testified that Keffer "changed" the commission agreement by hiring additional personnel. He testified that by hiring additional sales personnel, Keffer caused a diminution of his potential sales.

{¶ 8}  Folck further testified that some of his commissions were split with other sales people, so that he was not getting the full amount of his commissions. When asked about splitting commissions, Folck submitted a document that he claims showed he split a $100 used-vehicle commission with another salesperson. Folck further testified that the document shows that on another sale, which generated a commission of $520, he received $268.88 in commission, but had to give the remainder to another salesperson. He testified

that these two salespersons did not participate in the sale "except to show up." There was no documentary evidence submitted to demonstrate that commission splits were required by Keffer. From the record it appears that this was an accommodation among the sales personnel when they worked together on a sale.

{¶ 9} Folck further testified that the wage agreement stated that some of his sales would be generated from internet sales. A review of that document does not support his claim. Folck testified that he spoke to one manager in February 2012 (but he admitted that he was not sure of the date because he did not have the notes on hand), and complained that he wanted to be given more "internet leads" and "prior customer leads." He testified that the request went unfulfilled. Folck testified that he spoke to two other managers about receiving leads, but they failed to follow through with his requests. Folck testified that he did not advise them that the failure to resolve these issues to his satisfaction would result in his resignation.

{¶ 10} Folck testified that at least four hours a week he was required to perform non-commissionable tasks, such as delivering vehicles or putting gas into vehicles. He also submitted documents suggesting that he was scheduled to work at least five days per week during February and March, for a minimum of forty-five hours per week.

{¶ 11} Folck then presented the testimony of Joseph Bukovensky. Bukovensky testified that he thought he began working at Keffer some time in February 2012, but was not sure. He testified that he was given a wage agreement for a two-week training period, which provided that he would receive $400 in base pay during that time. He testified that during his training period Folck referred a customer to him and one other person. He testified that

they "finished that deal, but never got paid for that sale." Bukovensky testified that he only received $247 in base pay. However, he admitted that he did not complete the two-week training because he went "to a better offer someplace else," working outside the automobile business.

{¶ 12} Folck attempted to present the testimony of Andy Hicks, a former employee of Keffer. Mr. Hicks stated that he had not received any subpoena to testify, that he did not know Folck, and that he did not want to testify. He further stated that he had recently moved. The record shows that the Commission sent a subpoena to Hicks. The hearing officer advised Hicks that he could be subjected to contempt proceedings. The hearing officer then advised Folck that he could pursue contempt proceedings. There is no indication that Folck did so. Folck stated that Hicks was "the internet manager who did not disseminate the leads and was one of the highest paid employees at Keffer." Other than that, there was no proffer of Hicks's anticipated testimony.

{¶ 13} Finally, Folck presented the testimony of Virginia Lynn, who was Folck's "customer and personal friend." Lynn testified that she deposited Folck's pay checks and noticed that his "compensation kept dropping," despite the fact that he was "putting in a lot of hours every day."

{¶ 14} A decision denying Folck's claim for benefits was filed on September 7, 2012. In the decision, the hearing officer stated that "no reliable, substantive and probative evidence was offered to clearly establish that the employer failed to pay the claimant according the [sic] terms of his wage agreement. Therefore, claimant quit without just cause." Folck requested a review, which was granted. The Review Commission affirmed

the denial.

{¶ 15}     On April 25, 2012, Folck filed a separate application for benefits regarding his job at Keffer (Case Number C2012-016299).   This application was denied on the basis that the matter had already been heard, and could be administratively appealed, but not relitigated.   Ultimately, the Commission affirmed the denial.

{¶ 16}     Additionally, Folck filed for unemployment benefits for a period of four weeks in April and May 2012 with regard to a different employer (Case Numbers H2012-018501 and 2012-018502).   These applications were denied on the basis that they were untimely filed.   Again, the denial was affirmed by the Commission.

{¶ 17}     On October 31, 2012, Folck filed a notice of appeal in all four matters to the Clark County Common Pleas Court, which affirmed the decisions of the Commission. The trial court concluded that the record demonstrated that "Folck quit employment with Keffer without just cause."   The court further concluded that the evidence indicated that "Folck's own actions created his situation and rendered him ineligible for unemployment compensations [sic] benefits."     Folck appeals.

## II.   The Lack of Assignments of Error in Folck's Brief

## Leads Us to Infer Three Assignments of Error

{¶ 18}     Folck has not included "a statement of the assignments of error presented for review * * * [or]  a statement of issues presented for review" as required by App.R. 16(A)(3) and (4).   Furthermore, he has failed to comply with App.R. 19, regarding the form of his brief.   However, a review of his appellate brief indicates that the focus of Folck's

appeal is that the evidence does not support the decision of the lower tribunals. He further appears to argue that the failure to compel Hicks's testimony was error. With that in mind, we have inferred three assignments of error.

**III. The Commission's Decision that Folck Was Paid in Accordance with the Terms of his Commission Agreement, and therefore Lacked Just Cause to Quit, Is Neither Unlawful, Unreasonable, Nor Against the Manifest Weight of the Evidence**

{¶ 19}    Folck's inferred First Assignment of Error is as follows:

THE DECISION OF THE COMMISSION WAS UNLAWFUL, UNREASONABLE, OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20}    Folck contends that the decision of the commission is not supported by the evidence. In support, he argues that he demonstrated that Keffer did not pay him according to the terms of his commission agreement and that the commission agreement was modified.

{¶ 21}    The purpose of the Unemployment Compensation Act codified at R.C. Chapter 4141 is "'to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.'" (Emphasis deleted.) *Irvine v. Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985), quoting *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223, 199 N.E.2d 3 (1964). The provisions of the Act must be construed liberally. R.C. 4141.46.

**{¶ 22}** R.C. 4141.29(D)(2)(a) provides that individuals may not receive unemployment compensation benefits if they have quit their work without just cause. "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine*, at 17. Further, an employee "must notify the employer of the problem and request that it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job; those employees who do not provide such notice ordinarily will be deemed to have quit without just cause and, therefore will not be entitled to unemployment benefits." *DiGiannantoni v. Wedgewater Animal Hosp., Inc.*, 109 Ohio App.3d 300, 307, 671 N.E.2d 1378 (10th Dist. 1996).

**{¶ 23}** A common pleas court shall affirm the decision of the Commission unless it finds that decision "unlawful, unreasonable or against the manifest weight of the evidence." *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 20; R.C. 4141.282(H). This court is limited to the same standard of review. *Id.*, citing *Irvine* at 18. "Thus, a reviewing court may not make factual findings or determine a witness's credibility and must affirm the commission's finding if some competent, credible evidence in the record supports it. In other words, a reviewing court may not reverse the commission's decision simply because 'reasonable minds might reach different conclusions.' " *Id.*

**{¶ 24}** In this case, Folck contends that the problem with his working condition leading to his reasonable decision to quit was that he was not being paid his commissions as required by the commission agreement and that the commission agreement was changed during his employment. The Hearing Officer concluded that he failed to establish any

"reliable, substantive and probative evidence" of this claim.   We agree.

{¶ 25}    The record in this case demonstrates that the commission agreement merely set forth the minimum and maximum amounts for commissions.   The record  shows that Folck was assigned to work approximately forty-five hours per week; even given the four hours he claimed he spent on non-commissionable tasks, he still had at least forty hours per week to achieve his sales.   There is no evidence that he was the only salesperson required to perform some non-commissionable tasks as part of the job.   While the record arguably shows that he split two of his commissions while at Keffer, there is no evidence to indicate that this violated the commission agreement, or that he was forced to do so.   To the contrary, it appears that this was a routine "courtesy" extended when sales personnel worked together on a sale.   The record further shows that he received almost $3,000 in compensation for the six weeks of his employment, and that at least some of that income was from commissions. Folck admitted at the hearing that the language of the commission agreement was not literally changed during his employment.

{¶ 26}    The fact that the car dealership had twelve sales consultants did not violate the terms of Folck's commission agreement, which did not specify or limit the number of sales consultants the dealership could employ.   The record indicates that Folck was hired in with a new group of sales personnel, and that Keffer usually had as high as fourteen salespeople, because attrition rates in the industry are high.   Folck did receive commissions during the term of his employment.   While he claims that other salespeople took his sales from him, he only cited one instance in which a customer was directed to another salesperson.  Folck's claim that he did not get internet leads or new customer leads does not support a

conclusion that he was not paid, or that the commission agreement was modified, or not followed.

{¶ 27} Folck's inferred First Assignment of Error is overruled.

**IV. In the Absence of Either a Specific Request for the Invocation of Contempt Proceedings, or a Proffer of the Testimony of a Witness who Was Subpoenaed, but Declined to Testify, the Hearing Officer Did Not Abuse her Discretion by Continuing with the Hearing**

{¶ 28} Folck's Second Assignment of Error is:

THE HEARING OFFICER ABUSED HER DISCRETION BY FAILING TO COMPEL THE TESTIMONY OF A WITNESS.

{¶ 29} Folck appears to argue that the hearing officer abused her discretion by failing to compel Hicks to testify.

{¶ 30} The principles of due process apply to administrative hearings. R.C. 4141.281(C)(2). Hearing officers have a duty to question witnesses and fully develop the record. *Id.* However, a hearing officer has broad discretion in accepting and rejecting evidence, and in conducting the hearing in general. *Owens v. Ohio Bur. of Emp. Serv.*, 135 Ohio App.3d 217, 220, 733 N.E.2d 628 (1st Dist.1999). And hearing officers are not bound by the rules of evidence or procedure. *Harrison v. Penn Traffic Co.*, 10th Dist. Franklin No. 04AP-728, 2005-Ohio-638, ¶ 20.

{¶ 31} The record shows that a subpoena was served on Hicks, who essentially refused to testify. Folck was advised of this fact, and he was advised that he could seek

contempt proceedings against Hicks. Folck did not object; nor did he ask for a continuance of the hearing or seek any relief. Furthermore, Folck did not make a proffer of the testimony he expected from Hicks.

**{¶ 32}** In the absence of a proffer of testimony, we cannot determine whether Hicks's testimony would likely have affected the outcome of this case. *Harrison*, at ¶ 24. Likewise, without a request for a continuance or an objection, we cannot say that the hearing officer abused her discretion by continuing with the hearing. *Id.*

**{¶ 33}** Folck's inferred Second Assignment of Error is overruled.

## V. Folck's Remaining Applications Were Properly Denied as Constituting Relitigation of a Prior Claim, or as Untimely, Respectively

**{¶ 34}** Folck's inferred Third Assignment of Error is:

THE DECISION OF THE COMMISSION DENYING HIS APPLICATION IN CASE NUMBERS C2012-016299, H2012-018501 AND H2012-018502 WAS UNREASONABLE, UNLAWFUL AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 35}** Folck contends that the decision of the common pleas court and Commission should be reversed with regard to his remaining claims.

**{¶ 36}** We begin with case number C2012-16299. This case involves Folck's attempt to file a second application for benefits with regard to his employment at Keffer. The claim involved the exact issues and facts as set forth in his first application. The claim was properly denied as having been previously litigated. Furthermore, the claim was still

pending on appeal. Thus, we find no error in the denial of this claim.

{¶ 37} As noted above, the remaining two claims involve the denial of weekly unemployment benefits related to other employment with Veolia ES Technical Solutions, LLC. The record shows that Folck filed claims for unemployment benefits for the weeks of April 21, April 28, May 13, and May 26, 2012, and that he did not file these claims until June 19, 2012, via telephone. Folck does not dispute that they were untimely filed. Folck claims that he could not timely file these claims because of technical problems with the computer system at the Ohio Department of Job and Family Services. He claims that he was unable to access the system.

{¶ 38} At the hearing on the issue, the hearing officer asked Folck why he did not call until June 19, when he experienced problems with the computer system. At that point, Folck was clearly frustrated and began to disparage the hearing officer, using offensive language. He merely kept repeating that he had been unable to access the computer system.

{¶ 39} The hearing officer issued a decision concluding that Folck had not presented any evidence to support his claim that he was "deterred by circumstances beyond [his] control from filing a claim so as to permit the department to extend the filing time" as required by R.C. 4141.29(A)(3) and O.A.C. 4141-27-05(A) - (B). We agree. There is no evidence that Folck was prevented from timely filing his claims via telephone.

{¶ 40} Folck's inferred Third Assignment of Error is overruled.


**VI. Conclusion**

{¶ 41} All of Folck's inferred assignments of error having been overruled, the

judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Neal C. Folck
Michael DeWine
Alan Schwepe

Yvonne Tertel
Hon. Douglas M. Rastatter